Grafton,
May 4, 1943. } No. 3388.

EARLE C. MOFFATT, *Ex'r v.* ETTA S. GALE.

*Robert G. Wakefield* and *Cheney, Nighswander & Lord* (*Mr. Nigh-swander* orally), for the executor.

*Fred A. Jones, John H. Sanders* and *Robert W. Upton* (*Mr. Upton* orally), for the contestant.

ALLEN, C. J.  I. In a certain respect the procedure is unusual. The question whether an order setting aside the verdict has already been made is presented as well as that of the legality of the argument of counsel.  It is deemed advisable first to pass upon the claim of illegal argument.  A decision of illegality, with the result of invalidating the verdict, will make it unnecessary to determine whether the record entry of a Superior Court order should be annulled.  The proper procedure for correction of the entry is by *certiorari*, and the remedy is discretionary and not to be granted if substantial justice is attained by relief in some other manner.  *Grand Trunk Railway Co.* v. *Berlin,* 68 N. H. 168, 170; *Leighton* v. *Railroad,* 72 N. H. 224, 231. Hence the entry is not to be disturbed, although the issue relating to it is undecided, provided a result reached on other grounds shows that no injustice is done in retention of the entry.

II.  In argument counsel for the executor stated that the lawyer who drew the will and who testified by deposition "is now on the Federal Commission in Washington" and "has been on the Federal Power Commission in Washington since September, 1939."  The only evidence was that he was residing in Washington at the time the deposition was taken "and connected" with the Commission.  To each of these statements to the jury objection was made, and to the latter on the express ground that there was "absolutely no evidence to support it."  To each statement the court instructed the jury to disregard any misstatement of the evidence and take their own recollection.  The defendant excepted in each instance.

The exceptions were taken to valid orders of the court.  Defendant's counsel did not choose to ask for reference to the record of the trial if he regarded the instructions as inadequate to satisfy the objections (*Carr* v. *Orrill,* 86 N. H. 226, 229; *Manning* v. *Company,* 90 N. H. 167, 174; *Weiss* v. *Wasserman,* 91 N. H. 164, 167; *Moran* v. *Dumas,* 91 N. H. 336, 338), nor did he choose to ask for a mistrial on the ground of misconduct in deliberately misstating the evidence or on the ground that the harm of the argument was incurable.  He may not now say that the court did not adequately instruct the jury, when he failed to ask for further relief, or that a mistrial should be granted when he did not move for one.  Seeking no further action than was taken, and "Not objecting to the continuance of the trial, he might not fairly say that he had the chance of a favorable outcome with no risk of loss."  *Abbott* v. *Ladd,* 85 N. H. 541, 542.  These exceptions are overruled.

III.  The executor's counsel argued: "Did Angie Lambert [the

decedent] know of her sister Etta's [the contestant] true feeling toward her, and what do we have to show Etta Gale's true feeling for her sister? . . . What would a person who had a real affection for a loved one say when a doctor came to them and said 'can we perform an autopsy to satisfy our curiosity.' " The argument was allowed to stand as well as the rhetorical question: "Is that the act of a loving sister?" To both rulings exceptions were taken.

The argument directly attacked the contestant's affection for her sister, indirectly called for a finding that the decedent was aware of her sister's lack of affection for her, and implied that the autopsy was to satisfy the doctor's curiosity as well as that of the contestant. While the argument was mainly to discredit the contestant's attitude towards the decedent, it was also potentially effective in its bearing upon the other claims it advanced.

The only evidence relating to the autopsy is that it was performed the day after the decedent's death at the request of her attending doctor, and that the contestant granted the request, showing some interest to be present at the autopsy but being told that it was not right that she should be.

Argument that the decedent was aware of her sister's lack of affection for her because of the sister's consent to the autopsy, is too illogical to require more than the statement that the inference is even beyond conjecture. As a conclusion which could not possibly be drawn, it was evidently designed to confuse the jury with a false impression. It was of important relevance for the executor to show that the decedent's natural ties with the contestant's who as her sister was a next of kin were strained and weak. This could be argued only from the evidence, and argument that evidence of no possible tendency on the issue has any probative value is open to objection as improper. ". . . the assertion of an inference unwarranted by evidence will compel the setting aside of a verdict if it receives the express or tacit sanction of the court." *Salvas* v. *Cantin*, 85 N. H. 489, 491; *Carlin* v. *Drake*, 89 N. H. 52, 54; *Mann* v. *Company*, 90 N. H. 1, 2; *Ferris* v. *Saulnier*, 90 N. H. 96, 98.

Nor may it be reasonably inferred that the doctor asked for the autopsy out of curiosity. The decedent had suffered from a complication of ailments, and her attending doctor may well have desired to confirm his diagnosis and treatment of them while she lived, to establish the primary cause of her death, or to take the action in the interest of medical science and progress. With no inquiry made for his reason, it is wholly in the realm of conjecture to attribute one

of mere curiosity for it. The executor undertakes to give an innocuous meaning to the use of the word "curiosity" in reference to the doctor, while attributing significance to it with reference to the contestant. Fairly it was a word of undue disparagement against him as well as her and implied a callousness of feeling towards the decedent shared by both.

The doctor was a chief witness for the contestant, and it was proper that he should be discredited within legitimate bounds of argument. But to charge him with improper motives of which evidence is altogether lacking was unduly prejudicial. The professional reliability of the doctor as well as the credibility of his testimony was implicitly attacked by the charge. "Plaintiff's counsel, in making this argument, must have intended to accomplish some result favorable to his client. The fact which the jury was thus asked to infer was of that class which has a general tendency to discredit the opponent's case, although not logically material to any of the essential issues involved. . . . For this reason it was prejudicial and, since counsel sought to establish this fact by unlawful means, the verdict must be set aside." *Salvas* v. *Cantin*, 85 N. H. 489, 492. The argument was "a palpable misstatement of the evidence" (*Harvey* v. *Welch*, 86 N. H. 72, 75), upon an impressive point.

The argument was justified that the contestant's consent to the autopsy, in the light of her testimony indicating her desire to see it performed, was given to meet a demand of curiosity. Common knowledge tells us that in the absence of other explanation a layman is probably curious in his desire to witness an autopsy, and equally common knowledge tells us that in decent and common respect for one closely related by ties of blood and affection, curiosity must be efficient to prompt the desire and sufficiently so as to warrant the inference that love and affection for the decedent are neither deep nor strong. Lack of the contestant's sisterly interest for the decedent threw some light on the relations between them, and on the decedent's attitude towards her. Conceding cases which are not normal and in which an attitude generally regarded to be of disrespect may be only seemingly such, the contestant has not specialized herself in this respect.

IV. Another exception to argument is unconsidered. It presents no point thought likely to arise at a retrial.

*Case discharged.*

All concurred.