36

STATE *v.* FLORENCE LEAH W. GRIERSON.

38

*William L. Phinney*, Attorney General and *Warren E. Waters* (*Mr. Phinney* orally), for the State.

*William H. Sleeper* (by brief and orally), for the defendant.

BLANDIN, J. The defendant's exception to the admission of the testimony of marshal Redden given at the preliminary hearing is without merit. His death was admitted, the parties were the same, the same matters of fact were in issue and the charges in both proceedings grew out of the same happening. The record disclosed that defendant's counsel exercised the right of cross examination at the preliminary hearing fully and without limitation by the Court. Under these circumstances the evidence was clearly admissable. *Commonwealth* v. *Rhyal*, 274 Pa. 401, 410; *Lee* v. *State*, 124 Miss. 398; 122 A. L. R. 425, 429, 430; 159 A. L. R. 1240, 1246; 5 Wig. Ev. (3d. *ed.*), s. 1371; 23 C. J. S., Criminal Law, ss. 894-896. See also, *Orr* v. *Hadley*, 36 N. H. 575, 580.

The defendant next complains that the State was permitted to disparage her character by cross examining her regarding her relations with one Welsh, her drinking and kindred matters contrary to the rule that the prosecution cannot give evidence of an accused's bad character until the latter has put her character in issue. This argument overlooks the fact that the defendant here voluntarily took the stand and hence subjected herself "to the rules applicable to other witnesses." *State* v. *Fogg*, 80 N. H. 533, 535; *State* v. *Mannion*, 82 N. H. 518, 524. She could therefore be examined regarding any relevant

matter which tended "to discredit [her] as a witness." *State* v. *Travis*, 82 N. H. 220. This was not a situation such as existed in the cases cited in her counsel's brief where the State sought to introduce independent impeaching evidence and these cases have no application here. *Constantine* v. *Grenier*, 81 N. H. 550. There is no evidence that the Trial Court abused his discretion (*Gutterson* v. *Morse*, 58 N. H. 165, 166) and the defendant's exception is overruled.

Counsel for the defendant also objected on several occasions to questions by the solicitor in which Mrs. Grierson was asked, in effect, to state in relation to certain specific relevant testimony given by a witness whether the latter was telling the truth. In some instances her reply was noncommittal and no prejudice appears. See *Bogrett* v. *Hromada*, 91 N. H. 351, 354, 355. In others it is plain the defendant was not being asked to give an opinion upon the general veracity of the witness but that her own credibility and recollection were being tested by a method of cross examination which while not to be encouraged appears here to be unobjectionable (*State* v. *Green*, 121 S. C. 230) and within the Court's discretion (*State* v. *Hersom*, 84 N. H. 433, 435; *Noel* v. *Lapointe*, 86 N. H. 162, 167). If the defendant wished the effect of this evidence limited she should have asked for it and not having done so her exception fails. *State* v. *Travis*, 82 N. H. 220.

On the ground that it was based on an unsupported assumption the defendant objected to the following question by the solicitor: "Wouldn't it be awfully awkward, a man with a knife coming at you intending to fix you, wouldn't it be silly to turn it around and hit you with the back of his fist?" The defendant's claim had been that the deceased came at her with a knife in his right hand and then began hitting her with "his hand and fist," whether with the right, the left or both hands, she could not say. The solicitor then endeavored in vain to get her to admit that Peabody dropped the knife before he hit her, and as bearing on this sought by the above question to show that it was improbable the deceased still held the knife while he pummelled her. This was proper, and the question was calculated to discredit rather than support the assumption of which the defendant complains. The situation is the opposite of one where a party tries to prejudice the jury by assuming the truth of matters not in evidence as in the decisions cited by the defendant. It is rather an ordinary case of cross examination to test the credibility of a witness, (*Charles* v. *McPhee*, 92 N. H. 111, 115) and the exception is overruled.

The respondent next takes issue with the Court's refusal to give requested instructions to the effect that she need not retreat if as-

saulted in her own home but could stand her ground and use such force as reasonably necessary to repel the attack. The Court charged the jury in substance that Mrs. Grierson must act as a reasonable person under the circumstances and if, as the State claimed by so doing, she could have avoided the attack by retreating she was bound to do so; if not then she had the right to use reasonable force in repelling Peabody's assault. We believe the charge applied the law correctly to the facts in this case. Unquestionably the general rule, which we follow in this state, is that one attacked in his home by an intruder need not retreat but may stand his ground and use reasonable force to repel the assault even though this may result in the death of the intruder. However, here, as shown by the defendant's own admission, the deceased was not an intruder but was residing in her home, if not permanently, at least temporarily as her guest. "Thus a man's house is the dwelling place of . . . one who is residing, however temporarily . . . as a guest." Restatement, Torts, s. 65, p. 140. In such cases the privilege of the above rule does not exist and the person attacked must retreat if this is a reasonable means of avoiding the danger consistent with his own safety. Although we find no cases in this state squarely on the point the tenor of our decisions and the modern authority supported by the better reason uphold this doctrine. Beale, 16 Harv. Law Rev.567. See also, Restatement, Torts, s. 65, pp. 134, 135, 140. The rule stated there is believed applicable to crimes as well as torts under present day conditions. See also, *State* v. *Elliott*, 11 N. H. 540, 544, 545 and *Aldrich* v. *Wright*, 53 N. H. 398, 404, 407, 422 where *Doe*, J., after stressing the "immense value" which the law places on human life (*p.* 407) says (*p.* 422): "It is reasonably necessary that the person who kills another in his own defence should have first retreated as far as he conveniently or safely can, to avoid the violence of the assault. . . . The party assaulted must therefore flee as far as he conveniently can, either by reason of some wall, ditch, or other impediment, or as far as the fierceness of the assault will permit him. . . . This maxim of retreating to the wall is a statement of fact properly illustrating the weight to be given to the sanctity of human life in determining the reasonable necessity of killing a human being . . .." See also, *Bunten* v. *Davis*, 82 N. H. 304.

In the course of his argument the solicitor apparently undertook to state the above principles to the jury. He was interrupted by an objection and his disertation was not completed. The Presiding Justice after overruling the defendant's objection instructed the jury to take their law from the Court and not from either of the lawyers.

No objection was made to this instruction which the jury were presumed to follow. *State* v. *Slocinski*, 89 N. H. 262. The Court having impliedly found by his denial of the defendant's motion to set aside the verdict that the solicitor's misstatement, if any, was harmless the exception is overruled. *State* v. *Hale*, 85 N. H. 403, 413; *State* v. *Ellard*, 95 N. H. 217, 220, 221.

In the solicitor's opening statement he told the jury that upon the arrival of officer Levesque at the Grierson house Mrs. Grierson said to him "Charlie, Charlie, I killed him, I think I killed him." Later it appeared that the correct quotation was "I think I killed him, Charlie, I think I killed him." A few minutes later according to officer Levesque and marshal Redden she had repeatedly said "I killed him." No objection was made until in his argument the solicitor again represented Levesque as having heard the defendant say "I killed him, Charlie, I killed him." Upon objection the Court charged the jury to take their own recollection and not that of either lawyer and then the solicitor told the jury that if his recollection did not jibe with theirs to "take your own recollection." There was no request that the record be read and it appears any error was cured by the Court's instructions. *State* v. *Bass*, 93 N. H. 172, 178; *Moffatt* v. *Gale*, 92 N. H. 421, 422; *Manning* v. *Company*, 90 N. H. 167, 174. However, in view of the defendant's later repetition of the words, "I killed him" no prejudice is seen in any event. Cf. *State* v. *Bass, supra*, 178.

With reference to the denial of the motions to poll the jury and for a new trial it seems sufficient to say that an examination of the record discloses no grounds for disturbing the Court's rulings. Whether the jury should be polled was discretionary with the Trial Justice and no abuse appears. With reference to the motion for a new trial the record shows that the respondent's witnesses in support of the motion appeared before the Presiding Justice in accordance with the procedure approved in *State* v. *Bassett*, 93 N. H. 62. His implied finding that the evidence was insufficient to satisfy him that a new trial should be granted is plainly sustainable and this exception must be overruled. *State* v. *Long*, 90 N. H. 103, 107, and cases cited; *State* v. *Ellard*, 95 N. H. 217, 223.

The defendant's motion, in substance to set aside the verdict as against the law and the evidence, because the jury were mislead and because the defendant did not receive a fair trial raises no questions not saved by special exceptions taken during the trial. *State* v. *Proctor*, 91 N. H. 347; *Shea* v. *Manchester*, 89 N. H. 547, 549, and cases cited. The record discloses no grounds for disturbing the Court's

denial of this motion and no other error appearing in the record the order is

*Exceptions overruled.*

DUNCAN, J., dissented: the others concurred.

DUNCAN, J., *dissenting:* The jury was instructed that if the respondent could reasonably have avoided the attack without using force to repel it, and failed to do so, then she was guilty. In my opinion this was error. If the view be taken that failure to retreat is merely "a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing" (*Brown* v. *United States*, 256 U. S. 335, 343), then it was error to impose a catagorical duty. *Id.* If the view be taken that retreat is a positive requirement where apparently possible with reasonable safety, except that one attacked in his dwelling may stand his ground, then the respondent was improperly deprived of the benefit of the exception, which should not be restricted to cases of attack by intruders. *People* v. *Tomlins*, 213 N. Y. 240; *State* v. *Phillips*, 38 Del. 24; *Baugh* v. *State*, 215 Ala. 619.