Coos,
Apr. 3, 1951. } No. 4022.

RAYMOND R. LePAGE *v.* ST. JOHNSBURY TRUCKING CO., INC. & a.

*Murchie & Cofran* and *Thomas E. Flynn, Jr.* (*Mr. Flynn* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wyman* orally), for the defendants.

DUNCAN, J. The plaintiff's motions for a directed verdict in his favor, made at the close of the evidence, were properly denied. One motion was general; the other sought a directed verdict under the count of the declaration alleging an intentional wrong, upon the specific ground that the evidence was uncontradicted that the defendant Chamberlain intentionally "speeded up" the truck after he became aware of the plaintiff's presence on the truck. While it was conceded by the defendant that the speed of the truck increased "somewhat" after the plaintiff mounted the running board, there was a conflict in testimony as to the extent of the increase. The defendant testified that the vehicle was traveling five to ten miles an hour when the plaintiff got on, and that at no time thereafter did the speed exceed ten to twelve miles an hour; that although he made no attempt to stop and was

gathering speed as fast as he could, "that would be pretty slow there"; and that the maximum speed possible in second gear was fifteen miles an hour because of a governor on the truck. The evidence introduced by the plaintiff tended to prove a speed of twenty to twenty-five miles an hour when the accident occurred.

"It is only when from undisputed facts the only inference that can reasonably be drawn conclusively establishes the plaintiff's case that he is entitled to a verdict as a matter of law." *Williams* v. *Duston,* 79 N. H. 490, 491. A verdict "will not ordinarily be directed in favor of the party having the burden of proof." *Mitrich* v. *Tuttle,* 90 N. H. 512, 514.

The issue presented by the second count of the plaintiff's declaration was not whether the speed of the truck was deliberately increased, but whether the plaintiff was deliberately injured by the defendant. Increase in speed was only one of the factors alleged to have caused the plaintiff to be "thrown with great force from [the] running board." It was apparent from the evidence that speed was not the sole cause of the injury. The defendants' evidence warranted a finding that the plaintiff lost his balance while kicking the glass of the cab door; the plaintiff's that he was dislodged by reason of the door being opened, an occurrence which the defendant operator denied. It cannot be said that the facts which were undisputed warranted only one inference which established liability.

With respect to the count for negligence the jury could find that there was no material increase in speed and that if the plaintiff could safely board the truck at the speed it was traveling, he could safely dismount. Moreover, the question of his due care was a jury question on the evidence.

"The chief difficulty with the plaintiff's position is in meeting the jury's duty to discount and discredit testimony when they think they should." *Andrew* v. *Goodale,* 85 N. H. 510, 511. The plaintiff's evidence was not such that the defendants' liability was "the only conclusion which could reasonably be drawn from the evidence." *Hubbard* v. *Leighton,* 79 N. H. 190, 191.

The plaintiff stresses his exception to the order of the Court by which the defendants were permitted after the close of the evidence to plead justification or self-defense. It is asserted that the ruling was a violation of Superior Court Rule 21 (94 N. H. Appendix) in that the leave granted was not "for good cause shown"; and that the plaintiff was deprived of a fair trial. In making the argument,

the plaintiff recognizes the practice of long standing in this jurisdiction of permitting amendments when "seasonably" sought and the opposing party will not be prejudiced. See *Welch* v. *Coleman*, 95 N. H. 399; *Jackson* v. *Company*, 86 N. H. 341; *Lovejoy* v. *Ashworth*, 94 N. H. 8. Notice may also be taken of the line of decisions standing for the proposition that "it is not the practice here to spend time in the investigation of the technical accuracy of the pleadings" after the action has without objection been fully tried by the parties. *Barrett* v. *Cady*, 78 N. H. 60, 65. See also, R. L., c. 390, ss. 8, 9; *Gosselin* v. *Lemay*, 85 N. H. 13, 14; *McDonald* v. *Smith*, 79 N. H. 143.

It does not seem doubtful that the defendants might, and in compliance with the rule should have pleaded justification seasonably, unless they proposed to rely solely upon matters open under the general issue. Rule 21, *supra; Fortier* v. *Stone*, 79 N. H. 235; *Noyes* v. *Edgerly*, 71 N. H. 500; *Wheeler* v. *Whitney*, 59 N. H. 197. The nature of the claims of the parties must have been fully disclosed by the depositions taken in advance of trial. The fact that the defendants were required to meet issues presented by two different counts, and that they denied any conduct calculated to establish a deliberate injury should not have prevented seasonable pleading. Under our practice inconsistent defenses might be pleaded (*Bean* v. *Insurance Company*, 94 N. H. 342; *True* v. *Huntoon*, 54 N. H. 121), and the usual form of plea of the general issue with brief statement of justification (R. L., c. 391, s. 3) was adequate to present the defenses relied upon. See Newhall: Justice and Sheriff 125, 619. "Manifestly the permissibility of such inconsistent pleas prevents the plea of justification from being evidence in the plaintiff's favor on the plea of not guilty . . . ." *Shallcross* v. *West Jersey &c. Co.*, 75 N. J. L. 395, 396.

The defendants' motion for leave to plead self-defense presented the question of what justice required under the circumstances then existing. It could be granted if necessary for the prevention of injustice. *Hardy* v. *Nye*, 63 N. H. 612, 613. The plaintiff's objection was that to do so would produce injustice. The Trial Court was thus faced with a determination of whether justice required that the defendants be deprived of a possible defense, or that the plaintiff be subjected to a defense not pleaded before trial, or that the trial be discontinued.

The plaintiff argues that there was no evidence to show "good cause" for granting the motion, and that there was an abuse of

discretion. The provision of the rule by which late filing of a brief statement may be authorized "upon good cause shown" first appeared upon revision of the rule in 1947. *Cf.* 78 N. H. 691. The rule is still "consistent with the laws," (R. L., *c.* 370 *s.* 8) and its enforcement discretionary with the Court. *Lehigh &c. Co.* v. *Company*, 89 N. H. 274, 275. The requirement of "good cause shown" serves to introduce the familiar standard of what justice requires. *Jaques* v. *Chandler*, 73 N. H. 376, 381.

By allowing the plea the Court found against the plaintiff, but further found that justice required imposition of terms by which the plaintiff might have a mistrial at his election. Throughout the questions were questions of fact for the Trial Court to decide. Its decision may be set aside only if unsupported by the record. *Emerson* v. *Cobb*, 88 N. H. 199, 202. See *Twardosky* v. *Company*, 95 N. H. 279, 285, and cases cited.

In view of the plaintiff's evidence tending to establish that he was deliberately knocked from the running board, the defense which the defendants sought to present assumed major proportions. If the jury believed the plaintiff's evidence, the defendants' liability was a foregone conclusion unless self-defense could be established. The finding that loss of an important defense would be a greater penalty for belated pleading than the circumstances required cannot be held erroneous as a matter of law.

While the Court offered to discontinue the trial upon the ground of surprise to the plaintiff, the record indicates that the surprise arose from the lateness of the plea, rather than its nature. For reasons indicated, both parties must have been well aware before trial of the issues open upon the evidence. At the trial the plaintiff repeatedly inquired of his witnesses whether any threats had been made toward the defendant. His examination of the defendant disclosed the latter's motor vehicle report that the glass in the door of the truck had been kicked in. The defendant introduced without objection testimony that the truck was boarded by two men and met by four more lined "directly across the road," that they were there to stop trucks, that injunctions were shouted in abusive language, glass was pounded, and kicked in, and that the defendant kept the cab door locked because he "figured [he] would get a beating if they got [him] out of the cab." The plaintiff made no attempt to have this testimony excluded, or its use limited to the count in negligence. "Though the plaintiff might have insisted that a brief statement of the defense in pleading was

necessary in order to raise the issue, he 'by silence waived objection at the trial' " (*Bogrett* v. *Hromada*, 91 N. H. 351, 353), at least until the motion was offered after the evidence had closed. "The defendants could fairly infer . . . that the admissibility of their defense under the general issue was not contested." *Lyons* v. *Child*, 61 N. H. 72, 74. See also, *Folsom* v. *Brawn*, 25 N. H. 114, 121, 122.

The finding that the defendants should be permitted to plead upon the terms fixed by the Court was not unwarranted. *Martel* v. *White Mills*, 79 N. H. 439, 443. "Competing considerations are involved in such a determination." *Lewellyn* v. *Follansbee*, 94 N. H. 111, 114. We cannot say that it was improper to give more weight to one consideration than another. Subject to the ruling that the defendants might plead self-defense, disposition of the case was governed by the method believed to be best calculated to minimize any harmful effect upon the plaintiff, "in accordance with the judgment of [the plaintiff's] counsel." *Emerson* v. *Cobb*, *supra*, 199. Having elected "to go on with the trial and obtain a favorable verdict if [he] could" (*Lyman* v. *Brown*, 73 N. H. 411, 413), the plaintiff waived his right to stand upon his objection (*Id.*, 413), or at least should not now be heard to complain of the course which he elected. *Abbott* v. *Ladd*, 85 N. H. 541, 542; *Moffatt* v. *Gale*, 92 N. H. 421, 422.

The case of *Hopley* v. *Company*, 94 N. H. 171, relied upon by the plaintiff, bears little analogy to this. Discontinuance of a trial was not there involved. In advance of trial, the plaintiff declined an opportunity to bring and try with his pending action a second action for libel based upon a publication which occurred after the original action was brought. He objected to trial before jurors likely to have seen the publication. Upon transfer to this Court after trial, a new trial was ordered not because of error in proceeding to trial although the plaintiff "as was his right" had declined to bring the second action, but because no attempt was made to ascertain whether the second publication had affected the impartiality of the jurors. In the case now before us, however, the opportunity offered the plaintiff permitted him to avoid, if he chose to do so, the possible prejudice which he now says resulted.

While the transferred case contains no reference to any motion to set aside the verdict, we may take judicial notice that the Superior Court docket discloses that such a motion was made and denied. If this were not so, the issue would be one upon which this Court would not pass in advance of a finding by the Trial

Court. *Cyr* v. *Railroad,* 88 N. H. 278, 282, 283. Denial of the motion implied a finding that the trial was fair. *Berounsky* v. *Ogden,* 91 N. H. 424; *Amundsen* v. *Company,* 96 N. H. 85, 88. *Cf. Emerson* v. *Cobb, supra,* 202. We see no reason to disturb this finding.

A witness named Hill, who lived close by the intersection, was called by the defendant, and testified upon direct examination that he saw the car in which the plaintiff arrived "park directly across from my house . . . two wheels on the tar and two wheels off the tar next to . . . the fence." The plaintiff's witnesses had testified that the car was parked beyond the fence, entirely upon the gravel shoulder. On cross-examination Hill was examined from a statement produced by a state trooper, and conceded that he told the trooper "that they stopped the car off the road near my house."

Counsel for the defendants argued to the jury: "That statement made to the trooper, I submit, doesn't contradict what Mr. Hill told you on the stand. It was not shown Mr. Hill was asked any question beyond what was stated in that statement. . . ." Upon objection by opposing counsel that the argument was "contrary to the evidence," the Court commented, "There is nothing for me to do." Defendants' counsel continued with argument that the witness' statement was read to contradict him, that there was no doubt the statements were made, but that "what is here does not contradict what he told you on the stand." Counsel for the plaintiff thereupon excepted.

The argument contained no misstatement of the testimony, but was an attempt to reconcile the testimony on the stand with the statement to the trooper. The jury was urged to find the two versions consistent. Counsel was "stating his view of the effect of the evidence." *Lane* v. *Manchester Mills,* 75 N. H. 102, 107. The thought behind the argument, although not clearly expressed, apparently was that since the questions asked by the trooper did not appear, the answer that "They stopped the car off the road" did not necessarily mean that they stopped it "entirely off the road"; hence, that the statement was not inconsistent with what was said on the stand. This was legitimate, even if not convincing argument, against which the plaintiff might protect himself by his own argument. The instructions to the jury told them not to take "the evidence as the lawyers have recalled it to you in the course of argument," but to take it "as you remember it to have been given." No error is disclosed, and the exception is overruled.

Requested instructions upon the doctrine of the last clear chance were properly denied. They could be applicable, if at all, only under the negligence count of the plaintiff's declaration. If the defendant's conduct was deliberate, whether justified as self-defense or not, contributory negligence was no defense, and the doctrine of the last clear chance could not apply.

The evidence supporting the count for negligence did not warrant a finding that the plaintiff's injury resulted solely from speed or from the defendant's failure to stop. While it could be found from the plaintiff's testimony that speed accounted for his failure or inability to dismount, there was no evidence that he was injured in undertaking to do so, or that he would have been injured because of the speed had neither he nor the defendant engaged in any further conduct which caused him to be dislodged. His injury was caused by his fall from the running board because he lost his hold for some reason other than the speed of the truck. Assuming that he was not pushed from the truck as he claimed, his fall resulted from loss of balance. From the defendants' evidence it could be found that this happened as he kicked at the glass of the cab door. There was no evidence to warrant a finding that when this peril arose, the plaintiff was unaware of it or unable to avoid it or that the defendant knew this in season to take saving action. In brief, the doctrine of the last clear chance did not apply because it could not be found that the plaintiff was powerless to avoid the peril which caused the injury (*Clark* v. *Railroad*, 87 N. H. 36, 40) or that after it arose, the defendant had a "clear opportunity" to avoid it. *Hamlin* v. *Roundy*, 96 N. H. 123, 125, and cases cited.

The plaintiff excepted to the following instructions to the jury: "Of course, as you know, Mr. Chamberlain denies he opened the door at all, and the first question for you to decide is whether Mr. Chamberlain did do the acts which the plaintiff claims that he did do. Did he speed up his truck? Did he open and shut the door as has been described to you here? Now, of course, if he didn't do either one of these things, which of course he denies that he did do, then that ends the claims in this respect." Exception was taken to the last sentence upon the ground that "the defendant's own testimony admits that he did speed up after LePage was on the truck to his knowledge."

Literally interpreted the instruction was not strictly accurate. With respect to speed the defendant operator had testified that he proceeded to "gather speed somewhat." He testified that he was

unable to gain in speed "a big lot"; that "twelve miles I believe would be the tops." He had previously testified that he was traveling five to ten miles an hour when the plaintiff stepped on to the running board. His testimony was in contrast to the plaintiff's evidence placing the maximum speed of the truck at twenty or twenty-five miles an hour. This was the issue as to speed. While the defendant conceded that his speed was increased slightly, the plaintiff claimed that it was increased substantially.

The instructions given are to be interpreted in the light of the issue to which they related, and there is no reason to believe that they were misunderstood by the jury. The statement that the defendant denied speeding up his truck must have been used and understood in the sense that he denied speeding up his truck as the plaintiff claimed that he did. If the statement was technically inaccurate, there is no reason to believe that the plaintiff suffered prejudice. Since it related to the facts, and the jury was instructed to "remember . . . to take the evidence as you remember it to have been given by the witnesses," there can be no real possibility that the instruction "conveyed to the jury a wrong conception of the evidence." *Upton* v. *Railroad,* 82 N. H. 94, 96.

*Judgment on the verdict.*

All concurred.