Hillsborough,
No. 6067.

### STATE *v.* BERTRAND GAGNON

April 5, 1971.

*Warren B. Rudman,* Attorney General and *W. Michael Dunn,* Assistant Attorney General ( *Mr. Dunn* orally ), for the State.

*Joseph J. Balliro* ( of Massachusetts ) and *Leonard, Leonard, Prolman & Prunier* and *Jeffrey H. Mazerolle* ( *Mr. Balliro* orally ), for the defendant.

DUNCAN, J. The defendant was indicted for assault upon Ronald Simard on August 25, 1969 at Hudson, with intent to kill and murder. RSA 585:23. Trial was by jury, before *King*, J. The defendant was found guilty. In the course of the trial he excepted to evidentiary rulings, to the denial of a motion for mistrial, and to certain instructions to the jury. After the verdict the defendant moved to set the verdict aside upon the ground, among others, that the court erred in "failing to instruct the jury on the necessary intent for the defendant to be guilty of assault with intent to commit murder," and excepted to denial of the motion. Questions of law presented by the exceptions were reserved and transferred by the presiding justice.

At the time of the alleged offense the defendant, who was twenty-eight years of age, and his wife had separated, and divorce proceedings between them were pending. There was evidence that just prior to the separation, the defendant's wife accompanied by her minor child had made a trip to Montreal with Ronald Simard, an unmarried man, twenty-six years of age. When the Gagnons separated, Mrs. Gagnon and the child went to live with her brother and his wife in Hudson. There was evidence that thereafter the defendant had made numerous telephone calls to Mrs. Gagnon's temporary residence, and that a short time before the assault occurred he had invaded the residence of Simard's mother when Mrs. Gagnon and Simard were there together. It further appeared that Simard had at times talked with the defendant by telephone concerning the defendant's right to visit the child, and the payment of support. According to the testimony of the defendant, he had been threatened upon a number of occasions by Simard.

On August 25, 1969, while Mrs. Gagnon and the son were at Mrs. Gagnon's brother's home, the defendant on return from his employment out of state made a series of telephone calls to the brother's home. According to the defendant, he sought to speak with his wife to arrange a change of the day on which he might visit the child later in the week. Mrs. Gagnon declined to talk with him, and there was a series of altercations over the phone between Simard and the defendant. At approximately 9:30 P.M. the defendant drove to the house where his wife and child were staying. According to the defendant, this was for the purpose of visiting the child; and because of the threats which had been made by Simard, he put a revolver in his trouser pocket when he left.

Upon arrival he drove slightly past the house and parked his car. There was evidence that he sounded his horn, which he denied. His arrival was seen by occupants of the house, and Simard went downstairs and approached the defendant's car from the rear. The defendant testified that he saw someone running up behind the car, opened the door on the driver's side, swivelled himself around upon the driver's seat, and drew his revolver, because the person approaching appeared to have something in his extended hand. He testified that the revolver struck against the handle of the car door and discharged, that he "panicked," fired two more shots at Simard, whom he recognized by then, got back into his automobile, and recalled nothing more until he awoke the next morning in his office in Boston, Massachusetts. Simard was wounded three times in the encounter: first in the hip, again in the leg as he attempted to crawl away from the defendant's car, and finally in the hand.

The defendant took the stand to testify in his own behalf, and in the course of cross-examination was properly asked whether in July, following his separation from his wife, he had "dragged" her out of an automobile. *See State* v. *Grierson*, 96 N.H. 36, 38, 69 A.2d 851, 853-54 ( 1949 ). In this connection, he also testified that he had a temper "like every man, I guess," and that he did not think that he got "angry very often." On redirect examination, he described the incident in greater detail, indicating that at the time he did not know where the child was, and that he had gone up to the car where he saw his wife, and asked her to "go home and talk things over," and that she just followed him, and that they did as he suggested.

In rebuttal, the State called the witness Decoteau, who testified that he had been employed at the same place where Mrs. Gagnon worked and that he was taking her in his car to pick up her child, when he was followed by a car in which the defendant was riding. The witness testified that when they stopped, the defendant "opened the door and yanked out his wife" and "pushed her in the other car, and after that he threatened me." Objection by the defendant was overruled, and in response to the question "What did he say?," the witness replied, "He said he was going to send somebody from Boston to break both my legs and cripple me." The defendant thereupon moved for a mistrial, which was denied subject to exception.

The evidence was properly received in the court's discretion. While the evidence of threats toward the witness Decoteau was not competent to establish guilt of the assault upon Simard, clearly it was relevant to show the defendant's attitude toward persons friendly with his wife.

It is recognized that the State may not in rebuttal introduce independent impeaching evidence relating to collateral matters. *State* v. *Hersom*, 84 N.H. 433, 152 A. 276 ( 1930 ). However the attitude of the defendant with respect to matters involving his estranged wife, as portrayed by the answer of the witness Decoteau, was not collateral to the issues being tried. *Morley* v. *Clairmont*, 110 N.H. 12, 13, 259 A.2d 136, 137 ( 1969 ); *see State* v. *Braley*, 81 N.H. 323, 126 A. 12 ( 1924 ); *State* v. *Kouzounas*, 137 Me. 198, 17 A.2d 147 ( 1941 ). Insofar as the defendant's motion for mistrial might be thought to invoke the undue prejudice rule, it presented a question of fact for the trial court, and the evidence was properly received in the court's discretion. *State* v. *Braley, supra* at 324, 126 A. at 13 ( 1924 ).

Following the charge to the jury, the defendant orally requested the court "to instruct the jury that they must find that the defendant intended to kill Mr. Simard in order to find him guilty. " The presiding justice then indicated that if such an instruction were to be given, it would also be necessary to submit to the jury issues of whether the defendant was guilty of any lesser offenses. *See State* v. *Butman*, 42 N.H. 490, 491-92 ( 1861 ); *State* v. *Karvelos*, 80 N.H. 528, 120 A. 263 ( 1923 ); *State* v. *LeNoir*, 97 N.H. 462, 92 A.2d 159 ( 1952 ). Counsel thereupon withdrew his request without excepting to the ruling of the court. Having thus voluntarily elected a trial strategy of "all or nothing, " in preference to the risk of conviction of a lesser offense, the defendant may not now successfully assert error on the part of the trial court. *See LePage* v. *Co.*, 97 N.H. 46, 52, 80 A.2d 148, 153 ( 1951 ); *Moffatt* v. *Gale*, 92 N.H. 421, 422, 32 A.2d 526, 527 ( 1943 ).

The record indicates that at some time not disclosed by the transcript, the defendant filed a request for an instruction to the jury that it "must return a verdict of not guilty if you find . . . [ that ] the shooting of Mr. Simard was accidental . . . . " No exception to the denial of this request was taken at the close of the charge to the jury, nor does any exception appear elsewhere in the record. The charge included a statement that the defendant

98

"seeks to justify the assault on the grounds that it was both accidental or that he panicked, or that it was necessary in order to defend himself from an attack"; and instructions were given on the issue of self defense.

If the defendant's request was ever denied subject to exception, a question which we need not determine, there was no error. While the defendant's testimony might warrant a finding that the first shot from the revolver resulted from accidental discharge, there was no such explanation for the two additional shots which followed, both of which struck Simard, as he crawled upon the ground at the rear of the automobile in a vain effort to escape further injury.

We find no error in the trial. *State* v. *Chance*, 105 N.H. 178, 195 A.2d 748 ( 1963 ). The order is

*Exceptions overruled.*

All concurred.