Sullivan
No. 7530

## THE STATE OF NEW HAMPSHIRE

### v.

### THOMAS JOSEPH DORAN

June 7, 1977

492

*David H. Souter,* attorney general, and *Richard B. Michaud,* attorney (*Mr. Michaud* orally), for the state.

*R. John Roy,* of Manchester, and *Barry S. Weinstein,* of Boston, Mass. (*Mr. Roy* orally), for the defendant.

LAMPRON, J.   Defendant appeals from his conviction under RSA 634:1 III(a) for the burning of Cote's Restaurant in Claremont in the early morning of December 25, 1974. The defendant and his wife owned Cote's Restaurant at the time of the fire. The issue here is the propriety of the admission of certain impeachment testimony in the course of trial before a jury. Defendant excepted to rulings of the Trial Court (*Loughlin,* J.) and all questions of law raised by defendant's exceptions were reserved and transferred. For the reasons which follow we hold there was no error on the part of the trial court in admitting the testimony to which defendant objects.

At trial there was evidence that the fire was intentionally started. This evidence included testimony and exhibits tending to show that a coupling in a fuel oil line in the cellar of the restaurant had been loosened, that oil soaked materials were strewn about the cellar, and that a certain relatively rare type of candle

was used to delay the ignition of a fire in the above materials. One such candle was found still burning on one of the steps of the cellar stairs by firemen who extinguished the fire upstairs. There was evidence that during the afternoon of December 24, 1974, the defendant had been in one of the few places where such candles were sold in the Claremont area.

There was evidence that the defendant had increased the insurance coverage on the restaurant from $67,500 to $168,000 within six weeks before the fire and that on December 24, 1974, he attempted to make a payment for the augmented coverage. There was also evidence that the defendant had financial difficulties in the operation of the restaurant. During the three-week period immediately preceding the fire, the defendant's son and daughter-in-law moved out of the apartment above the restaurant, taking most of their furniture and personal effects. Some of these were removed in the afternoon preceding the day of the fire. The defendant was the last person to be seen at the restaurant during the afternoon before the fire. Routine police patrols and inspections of the restaurant were made periodically through the night of the fire and the police saw nothing suspicious before the fire broke out around 4:00 a.m. on December 25, 1974.

The defendant's wife and son were, among others, witnesses on his behalf at trial. Their testimony tended to rebut or mitigate the state's evidence that the restaurant business was in financial difficulty. They corroborated defendant's exculpatory testimony and also sought to establish an alibi for the defendant. One theory of the defense was that a burglar could have started the fire in order to destroy any evidence of his presence in the restaurant. Defendant's son testified that approximately $1,200 which had been left in the restaurant's safe disappeared between December 24, 1974, and January 2, 1975. He also testified that money was missing from a pair of cash registers. One of these was damaged by the fire so that it could not be opened, but shaking it showed it to have been emptied before the fire. There was no indication that anyone had tampered with the safe. The person who set the fire apparently intended it to start in two separate places. Neither was in the office where the safe was located.

The state sought to impeach the credibility of defendant's son, Thomas Doran, Jr., by asking him on cross-examination about a conversation, in October preceding the fire, with Rebecca Revoir, a saleslady in a local shoe store. He denied having stated to her

that his father, mother and family did not like Claremont or its people, and that the only way they would be free of the restaurant was if it burned down. For the same purpose, Anne Doran, the defendant's wife was asked on cross-examination about a conversation in November preceding the Christmas Day fire, with Karen Lihatsh, who was a waitress at the restaurant for a short time. She denied having stated to Karen that the Dorans did not like the area and that the only way they could get out of the business was if the place burned down. Defendant excepted to the cross-examination of Thomas Jr., but not to that of Anne.

Later in the trial, the state called Rebecca and Karen as rebuttal witnesses. Rebecca testified that defendant's son made the statement attributed to him in cross-examination. Karen also testified that defendant's wife made the statement attributed to her in cross-examination. Defendant objected to their testimony and requested "that there be given a limiting instruction that this is solely for the purposes of credibility." The instructions given by the trial court will be discussed later in this opinion.

■ The alleged statements did not pertain to a collateral issue, but rather, to the issue of whether or not the defendant had a motive to burn his restaurant for the purpose of collecting insurance, the crime for which he was being tried. *State v. Gagnon,* 111 N.H. 94, 276 A.2d 3 (1971). The testimony of defendant's son and of his wife tended to show that the defendant did not set the fire, that he had no motive to do so, and that it was probably set by someone else. The trial court could properly find that their prior statements were inconsistent with their testimony and raised the issue of their credibility for consideration by the jury. McCormick, Evidence § 34, at 68 (2d ed. 1972); 3A J. Wigmore, Evidence § 1004 (Chadbourn rev. ed. 1970).

■ "For this purpose the making of the previous statements may be drawn out in cross-examination of the witness himself, or if on cross-examination the witness has denied making the statement . . . the making of the statement may be proved by another witness." McCormick, *supra* at 67. The prejudicial effect that this testimony might have on the defendant was called to the attention of the court. We can assume that the court considered this matter and that its admission constituted a finding by the trial court that no undue prejudice would result. *State v. Gagnon,* 111 N.H. 94, 97, 276 A.2d 3, 5 (1971).

■ Under our decisions the testimony of the rebuttal witnesses was to be considered solely on the issue of the credibility of the testimony of defendant's wife and son. It was not to be considered as proof of the truth of what the statements contained. *State v. Gomes,* 116 N.H. 113, 352 A.2d 713 (1976). The trial court was under an obligation to inform the jury to this effect. *State v. Chickering,* 97 N.H. 368, 372, 89 A.2d 206, 209 (1952).

■ When defendant's son was asked on cross-examination if he had made the statements in question, the trial court instructed the jury that this type of cross-examination is limited solely to the credibility of the witness as to whether or not he is telling the truth. "This should not be used and it cannot be used and I admonish you very strictly, as any admission of guilt on the part of the defendant in this case . . . [or] that the father ever made . . . [the statements] or that the father is guilty in any way." When the witness Revoir testified in rebuttal to the making of these statements in question by defendant's son, the court repeated substantially the same instructions. Similar instructions were also given to the jury when witness Lihatsh testified in rebuttal as to the statements attributed to defendant's wife. Finally similar instructions were given in the court's charge to the jury to which there were no exceptions by the defendant. We hold that the court's action in this respect properly instructed the jury that these statements were to be used solely to evaluate the credibility of defendant's son and wife as witnesses and were not to be considered as proof of the guilt of the defendant himself. *State v. Cote,* 108 N.H. 290, 297, 235 A.2d 111, 116 (1967). We have no reason to assume or conclude on the record before us that the jury did not follow the court's instructions. *State v. Covington,* 290 N.C. 313, 338, 226 S.E.2d 629, 646 (1976); *State v. Valdez,* 19 Utah 2d 426, 432 P.2d 53 (1967); 5 Am. Jur. 2d *Appeal and Error* § 890 (1962); *see Haskell v. Railway,* 73 N.H. 587, 64 A. 186 (1906); *Chouinard v. Shaw,* 99 N.H. 26, 29, 104 A.2d 522, 524 (1954).

*Exceptions overruled.*

All concurred.