Coos
No. 82-121

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL A. BAILLARGEON

December 29, 1983

356

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief and orally), for the State.

*Earl F. Gage*, of Berlin, by brief and orally, for the defendant.

BROCK, J. In this appeal of a criminal conviction, the defendant raises several issues. One of those issues requires that we reverse and remand for a new trial. First, however, we address a question involving the form of the verdict handed down at trial.

The defendant was indicted by the Coos County Grand Jury for the crime of second-degree murder. RSA 630:1-b, I(b). At the conclusion of his trial, the Superior Court (*Dunn*, J.) instructed the jury that it could find the defendant guilty either of second-degree murder or of the lesser-included offense of manslaughter. RSA 630:2, I(b) (Supp. 1983).

When the jury returned from its deliberations, the clerk of court asked whether it had found the defendant guilty or not guilty. The foreman responded "Guilty", without specifying to which offense the verdict referred. Neither the court nor counsel noted any ambiguity in the verdict until well after the jury had been discharged. The defendant was sentenced to eighteen years to life in the State prison, clearly on the assumption that he had been convicted of the more serious charge. The maximum penalty for manslaughter is thirty years. RSA 630:2, II (Supp. 1983).

■ While there is no clear precedent in this State, other jurisdictions are generally in agreement on the result in such cases. If the evidence could have supported a conviction for either offense, and there is nothing in the record to indicate which offense was meant, a verdict of this type is "unalterably ambiguous" and a conviction on the greater charge cannot stand. *See, e.g., Glenn v. United States,* 420 F.2d 1323 (D.C. Cir. 1969); *State v. Fungone,* 134 N.J. Super. 531, 342 A.2d 236 (1975).

■ The courts disagree on whether the proper remedy is a new trial, *Glenn v. United States supra,* or an order that a conviction be entered on the lesser charge, *State v. Fungone supra; Kreiser v. People,* 199 Colo. 20, 604 P.2d 27 (1979); *cf. United States v. Quicksey,* 525 F.2d 337 (4th Cir. 1975), *cert. denied,* 423 U.S. 1087 (1976) (if government did not consent to resentencing on the lesser charge, court would remand for a new trial). The cases agree, however, that once the jury has been discharged, an incomplete or otherwise defective verdict cannot be mended by recalling the jury. *See, e.g., LeMelle v. Commonwealth,* 302 S.E.2d 38 (Va. 1983).

■ Because we are remanding this case for a new trial on other grounds, we need not decide what disposition would be proper in a case in which an ambiguous verdict was the only error. We strongly urge, however, that future ambiguities of this type be averted if possible, or else corrected by prompt action before the jury is discharged.

The defendant was indicted in connection with the death of his eight-month-old daughter. An autopsy indicated that death had resulted from a cerebral hemorrhage of a type generally caused either by blows to the head or by violent shaking. The autopsy also revealed approximately twenty-six bruises on the baby's head. The examining physician testified at trial that, although one blow can produce several bruises, the wide distribution of the bruises in this case indicated that several blows must have been struck. He also testified that it was most likely that the baby had been injured within twelve hours of her death, which occurred at 11 p.m. on March 3, 1981. There was conflicting testimony from another pathologist, who had not attended the autopsy but had examined the relevant specimens, slides, and other materials: he stated that the interval between injury and death could have been as much as thirty hours.

When the defendant was questioned by police shortly after his daughter's death, he admitted that he had been alone with her on March 3 from at least 11 a.m., when he awoke, until shortly before 3

360

p.m., when he took the baby to a hospital. It is undisputed that the defendant's wife left their house shortly before 6 o'clock that morning. The defendant denied that he had struck the baby and also denied that the baby had fallen. Arrested on March 13, 1981, and indicted on April 22, 1981, he continued to deny any mistreatment of his daughter.

On December 3, 1981, eleven days before the start of his trial, the defendant submitted to a polygraph test administered by the State Police. Defendant's attorney, who had approved the test, agreed with the trooper administering the test that the defendant would be asked a series of questions, of which only two would be "relevant" to the case: both sought to ascertain whether the defendant had struck his daughter. The attorney was informed that he could not be present during the test, and that the defendant would have to sign a waiver of his *Miranda* rights before the test began. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The attorney was not informed that a second trooper would be monitoring the test by means of a one-way mirror and a listening device.

The defendant signed the waiver of *Miranda* rights. He was then questioned for about two hours and seventeen minutes. At some point during that period, the trooper operating the polygraph turned off the machine and informed the defendant that his answers were not completely truthful. He then continued to question the defendant and elicited inculpatory statements which, after the defendant's motion to suppress them was denied, were introduced into evidence at trial.

The trial judge ruled the statements admissible on the condition that no mention be made of their context, *i.e.*, the taking of a polygraph test. His ruling was based on the apparent lack of any "subtle, psychological persuasion" exerted on the defendant by the trooper conducting the test. The defendant excepted to the court's ruling, and asserts on this appeal that the ruling was error because "[t]here was no permission given or requested to go beyond the scope of [the agreed-upon] questions, nor any waiver of the defendant's constitutional rights against self-incrimination and right of effective counsel beyond the scope of the examination agreed upon."

The State responds that the defendant's statements were made in response to "reiteration" of the two relevant questions, that is, within the agreed-upon context of the test; that he waived his rights before taking the test and never reasserted them; and that in any case he did not raise any issue of constitutional rights in his motion to suppress the statements. We find these arguments unpersuasive.

First, we note that the motion to suppress asserted that the

defendant's attorney had been excluded from the polygraph test room during the entire test period, including the "follow-up" questioning. While perhaps not artfully pleaded, this assertion could hardly be construed as anything other than a claim of violation of the defendant's right to counsel, in one or more of its various forms. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI, XIV.

Second, we disagree with the State's characterization of the "follow-up" questioning of the defendant. The State relies on *Wyrick v. Fields*, 103 S. Ct. 394 (1982) (per curiam) for the propositions that questioning of this sort "effectuate[s] no significant change in the character of the interrogation," and that mentioning and then asking a defendant about an unfavorable result of a polygraph test is not significantly "coercive." *Id.* at 396. In *Wyrick*, however, there was no agreement similar to that in the instant case that interrogation would be limited to specific, previously agreed-upon questions.

█ It was therefore not as "unreasonable" here as it was in *Wyrick* "for [the defendant] and his attorney[] to assume that [the defendant] would not be informed of the polygraph readings and asked to explain any unfavorable result." *Id.* It was certainly not unreasonable to expect that the defendant would be reminded of his rights and asked to waive them before any such follow-up questioning. *See Henry v. Dees*, 658 F.2d 406, 409–10 (5th Cir. 1981). In the circumstances of this case, the defendant's waiver of his rights was clearly not unconditional, but was predicated on the assumption that his interrogation would be confined to the questions agreed upon. Therefore, the State has not carried its burden of proving a voluntary waiver. *See State v. Berube*, 123 N.H. 771, 774, 465 A.2d 509, 511–12 (1983).

██ Moreover, *Wyrick* dealt only with a defendant's right to avoid self-incrimination, under the fifth and fourteenth amendments of the United States Constitution. As Justice Marshall pointed out in his dissent in *Wyrick*, the right to assistance of counsel under the sixth and fourteenth amendments provides different, and sometimes more extensive, protections. *Wyrick v. Fields*, 103 S. Ct. at 399–400 (Marshall, J., dissenting). Still further protections are provided by the right to assistance of counsel granted by part I, article 15 of our State Constitution. *See State v. Scarborough*, 124 N.H. 363, 368, 470 A.2d 909, 913 (1983); *State v. Clough*, 115 N.H. 7, 10, 332 A.2d 386, 388–89 (1975). Because the defendant was under indictment, those protections were in force during the polygraph test here. *See State v. Chaisson*, 123 N.H. 17, 28, 458 A.2d 95, 101 (1983).

The State's failure to adhere to the agreed-upon format of the test makes this case analogous to those sixth amendment cases in which other agreements to limit or cease interrogation were broken by various indirect means. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 401 n.8 (1977); *State v. Berry,* 592 S.W.2d 553, 561 (Tenn.), *cert. denied,* 449 U.S. 887 (1980) ("The law will not permit law enforcement officials to do by ruse, trickery, deceit and deception that which it [sic] is not permitted to do openly and honestly. Nor will the law permit the State to dishonor its commitment and renege on its promise to defendant's counsel.").

We also find strong similarities here to those cases in which the government was held to have violated a defendant's right to due process of law by reneging on a plea bargain agreement. *Johnson v. Mabry,* 707 F.2d 323 (8th Cir. 1983); *Cooper v. United States,* 594 F.2d 12 (4th Cir. 1979). If fundamental rights are involved, "it is simply unfair to permit the government in effect to go back on its word." *Johnson v. Mabry, supra* at 328. The due process guarantees in both our State and Federal Constitutions were intended to prevent just this kind of official overreaching. We accordingly hold that the trial court erred in failing to suppress the defendant's statements made in response to the follow-up questioning at his examination on December 3, 1981.

The defendant's other arguments are without merit. He argues first that there was insufficient evidence to support a guilty verdict, even for manslaughter.

> "In examining this contention, we will view the evidence in the light most favorable to the prosecution. We will uphold the jury's verdict unless 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' Furthermore, circumstantial evidence may be deemed sufficient to support a conviction if it excludes all other rational conclusions."

*State v. Cobb,* 123 N.H. 536, 540, 465 A.2d 1203, 1206 (1983) (citations omitted). Viewing all the evidence presented at trial under this test, we conclude that a rational jury could have returned a verdict of guilty *either* of manslaughter *or* of second-degree murder.

The alteration of the indictment during trial, deleting a reference to the estimated number of blows inflicted on the deceased, had no effect on the State's burden of proof; and the State's failure to establish a precise number of blows had no significant bearing on the sufficiency of its case. *See State v. Aldrich,* 124 N.H. 43, 51, 466 A.2d 938, 943 (1983).

 Nor do we find that the trial court erred in failing to find undue prejudice resulting either from the indictment alteration or from the admission of testimony by the defendant's wife concerning her filing of a domestic violence petition against her husband. *See* RSA 173-B:3. While it may certainly be possible for the State to prejudice a jury unduly by alleging unprovable facts in an indictment, only to delete the reference after the jury has heard it, the allegation here was not sufficiently at variance with the evidence to warrant a finding of prosecutorial misconduct. The testimony of defendant's wife was properly admitted on cross-examination to impeach the credibility of her earlier testimony, on direct examination by defense counsel, that her husband was a loving father. *See State v. Doran*, 117 N.H. 491, 494, 374 A.2d 950, 952 (1977).

The relief sought by the defendant on this appeal is a new trial. The defendant's request for a new trial is granted.

*Reversed and remanded for new trial.*

SOUTER, J., did not sit; the others concurred.