Rockingham
No. 83-403

THE STATE OF NEW HAMPSHIRE

v.

ANN S. MALONEY

March 18, 1985

*Gregory H. Smith*, attorney general (*Andrew L. Isaac*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

KING, C.J. We are asked to review the misdemeanor conviction in Superior Court (*Contas*, J.) of the defendant, Ann S. Maloney, for hindering apprehension or prosecution of a criminal pursuant to RSA 642:3, I(a). We affirm the conviction.

The factual basis of this appeal began with the attempted execution of a valid arrest warrant by officers of the Exeter Police Department. The warrant authorized the arrest of Jack Maloney, the defendant's husband, on a charge of simple assault and battery.

Upon their arrival at the Maloney home on the evening of January

31, 1982, the policemen, Sergeant Bernstein and Officer Fantoni, observed the defendant and her husband through a window in the front of the house. The two were sitting in the living room. Officer Fantoni went to a side door, knocked, and was met by the defendant, who stated that her husband was not at home. When informed that the officer had a warrant for her husband's arrest, she stated that she was not properly dressed and would be back momentarily, and tried to close the door. Officer Fantoni prevented her from securing it by blocking it with his foot and the door remained open two or three inches.

Sergeant Bernstein maintained his observation from the front of the house. Following Officer Fantoni's approach to the side door, Sergeant Bernstein saw the defendant leave her chair and walk toward the door. After a brief interval, the defendant returned to the living room and communicated briefly with her husband. They both then left the room.

Sergeant Bernstein then joined Officer Fantoni at the side door. The two entered the kitchen and continued through the house to the front corridor, which contained a stairway. The defendant stood at the bottom of the stairs. The officers repeatedly requested that she ask her husband to come downstairs. She stated that he was not there and that the officers needed a search warrant. When shown the arrest warrant she continued to insist that he was not at home.

Finally, after continued argument, Sergeant Bernstein placed the defendant under arrest and proceeded up the narrow stairway by pushing past her. Sergeant Bernstein found Mr. Maloney in an upstairs bathroom standing "pressed up . . . against the wall behind a cabinet." The defendant became emotionally upset and was subsequently taken to the police station, into which she was carried from the patrol car. She was charged with hindering apprehension pursuant to RSA 642:3.

The defendant raises three issues for consideration. She argues primarily that her conviction rests on a misconception of the term "harbor" under RSA 642:3, I(a) and that the evidence in this case is legally insufficient to convict her under the statute. The defendant also argues that because RSA 642:3 was "first 'enacted in 1967 . . . as an accessory after the fact statute,'" *State v. Laponsee*, 115 N.H. 56, 59, 333 A.2d 447, 449 (1975) (quoting REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS 94 (1969)), the common law defenses to a charge of accessory after the fact should be read into the statute. At common law a wife did not become an accessory after the fact by aiding her husband. Finally, the defendant argues that the trial court's refusal to give a requested jury nul-

lification charge, combined with an allegedly erroneous reasonable doubt instruction, were reversible error.

RSA 642:3 provides in part: "I. A person is guilty of an offense if, with a purpose to hinder, prevent or delay the discovery, apprehension, prosecution, conviction or punishment of another for the commission of a crime, he (a) harbors or conceals the other . . . ." There is ample evidence of physical acts by the defendant undertaken with "a purpose to hinder, prevent or delay the discovery" of her husband by the police officers. The issue raised is whether the defendant's acts constitute "harboring" under the statute, the act with which she is charged. We conclude that they did.

The defendant was informed when she answered the door that the officer possessed a warrant for her husband's arrest. The evidence adduced at trial supports a finding that she then took steps to inform her husband of this and to secrete him upstairs, as observed by one of the officers. The present case is thus distinguishable from *United States v. Foy*, 416 F.2d 940, 941 (7th Cir. 1969), relied on by the defendant, in which the State failed to prove that the defendant took affirmative action toward aiding the criminal once the defendant learned that the criminal was being sought by the police. Thus, in *Foy*, the only issue was whether the false statement of the defendant that he did not know where the criminal was was sufficient to constitute harboring or concealing under the federal statute; there was no evidence that the defendant rendered actual aid to the fugitive, who was discovered hiding on a window ledge outside the defendant's apartment.

In the instant case the defendant's acts upon learning of the arrest warrant, as observed by Sergeant Bernstein, supply the additional facts missing from the analysis in *Foy*. The *Foy* court defined "harbor" as "to lodge, to care for after secreting the offender" and stated that the "statute proscribes acts calculated to obstruct the efforts of the authorities to effect arrest of the fugitive . . . ." *Id.* Viewing the evidence in the light most favorable to the State, we conclude that the jury's verdict is supported by the evidence.

With regard to the defendant's second point, it is true that at common law "[w]ives did not become accessories by aiding their husbands." W. LaFave & A. Scott, Criminal Law 523–24 (1972). As there is no express exemption contained in RSA 642:3, defendant urges the court to construe the provision "against this common law backdrop" and establish an exemption by implication. To do this, however, would run contrary to the intent expressed in the Model Penal Code, from which the substance of the New Hampshire hindering apprehension statute was originally drawn. Report of Com-

MISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS, comment § 587:3, at 94 (1969). In their commentary to the Model Penal Code provision the authors explained:

> "Section 242:3 does not contain a statutory exemption, in part on the ground that this is a factor that can be taken into account at sentencing. It is hard to justify any particular limitation on an exemption provision. Furthermore, exemption rules create trial difficulties if the government bears the burden of proving that none of the specified relations exists.
>
> Most recently enacted or proposed revisions do not contain an exemption provision."

MODEL PENAL CODE § 242:3, comment 5, at 237 (1962). Through the vehicle of the committee report recommending the adoption of the provision taken from the Model Penal Code, the legislature has expressed its intention not to exclude wives or other relatives from the scope of RSA 642:3. *See Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982).

 Lastly, the defendant challenges the trial court's refusal to instruct the jury as to its power of jury nullification. The requested instruction would have permitted the jury to acquit the defendant even though the evidence established beyond a reasonable doubt the defendant's guilt. However, in *State v. Weitzman*, 121 N.H. 83, 89, 427 A.2d 3, 7 (1981), this court enunciated the rule that "[j]ury nullification is an historical prerogative of the jury; it is not a right of the defendant." *See State v. Mayo*, 125 N.H. 200, 480 A.2d 85 (1984) (jury nullification is neither a right of the defendant nor a defense recognized by law). We conclude that the trial judge committed no error in refusing the jury nullification instruction.

Nor do we accept the defendant's argument that the combined effect of refusal of the jury nullification charge and the trial judge's reading of the reasonable doubt charge constituted reversible error. Among the instructions given to the jury was the following:

> "If the State has failed to prove any of those elements beyond a reasonable doubt, then you must return a verdict of not guilty. But if the State has proven beyond a reasonable doubt every one of those elements, then you *must* return a verdict of guilty."

(Emphasis added.)

 The model instruction recommended by this court states that the defendant "should" be found guilty if the State has proven its

case, not that he or she *must* be. *State v. Wentworth*, 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978). However, inasmuch as the defendant herein does not challenge the effectiveness of the charge as to the reasonable doubt standard, and, as we have recognized, the defendant is not entitled as of right to a jury nullification charge, we find the divergence to be immaterial and harmless.

*Affirmed.*

All concurred.