Hillsborough
No. 87-155

THE STATE OF NEW HAMPSHIRE

v.

JOHN SURETTE

June 8, 1988

*Stephen E. Merrill,* attorney general (*Kathleen A. McGuire,* assistant attorney general, on the brief, and *Cynthia White,* attorney, orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.  A jury found defendant John Surette guilty of burglary, in violation of RSA 635:1. The sole issue on appeal is whether the Trial Court (*Goode,* J.) erred in submitting to the jury four special interrogatories to assist the jurors in reaching their verdict, without providing an instruction on jury nullification. For the reasons that follow, we reverse and remand for a new trial.

The defendant was convicted of a burglary that he committed on March 7, 1986, in a home located in Bedford. According to the testimony of the owners, Donald and Margaret Squires, at approximately 12:10 on the morning of the day in question, they heard unusual sounds coming from downstairs. Mr. Squires retrieved his .38 caliber revolver and proceeded downstairs in the direction of the sounds, which were emanating from the gameroom. He opened the door and was able to see light coming through the window across from where he was standing. He saw an individual appear in front of the window with arms stretched out towards him, causing him to react by firing three shots at the figure. After a moment of silence, Mr. Squires noticed another figure standing to his left, and he fired two shots at him.

The first intruder, Kevin Cote, died from the gunshot wounds; the ·second intruder, the defendant, ·was shot in the chest. Mr. Squires testified that as the defendant was struggling to get up, he asked why he was shot at. Mr. Squires testified that he responded by asking what the two men were doing in his house, and that the defendant hesitated, as if he was making up an answer, before he replied that they were looking for a telephone.

According to the testimony of the defendant, he, and his girl friend, Carol Hampe, and Cote had been consuming beer since 5:00 p.m. the previous day. They ran out of beer in the evening and went out in Cote's car to get some more. After purchasing beer, Cote continued to drive around, but did not tell either the defendant or Hampe where he was going. Cote stopped the car near the Squires'

home and, without explanation, got out of the car and walked towards the house. After waiting ten to fifteen minutes, the defendant followed Cote's tracks in the newly fallen snow leading to the house. He saw a broken window and, according to his testimony, went through the window into the house and attempted to get Cote out. The defendant testified that Cote told him that he was looking for a phone. He testified also that when Mr. Squires entered the room and shot Cote, he shouted "I give up. Call the cops," but that Mr. Squires ignored the plea and shot him.

After instructing the jury on the elements of the offenses of burglary and criminal trespass, and the State's burden of proving the specific elements of the offenses beyond a reasonable doubt, the trial judge submitted to the jury two pages of special questions, the first page of which contained the following four questions:

### "Special Findings

Does the jury unanimously find beyond a reasonable doubt that:

1. John Surrette [sic] did, on or about March 7, 1986, purposely enter the dwelling occupied by Donald and Margaret Squires in Bedford in the nighttime?

Answer: _____
(Yes or No)

2. John Surrette was not licensed or privileged to enter the Squires dwelling at the time?

Answer: _____
(Yes or No)

3. The Squires dwelling was not open to the public at the time?

Answer: _____
(Yes or No)

4. John Surrette entered the Squires dwelling at the time with the purpose to exercise unauthorized control over property i.e. possessions belonging to the Squires with the purpose to deprive them of it?

Answer: _____
(Yes or No)

If any question is unanimously answered 'No,' you must find the defendant not guilty of burglary.

The jury finds the defendant John Surrette _____
(Guilty or
_____ of burglary."
Not Guilty)

The defendant's lawyer agreed to the use of the special questions, but only on the condition that the trial judge also instruct the jury on its power to nullify. The State neither requested the use of the findings form nor objected to the defendant's request for instructions on jury nullification. The trial court, however, denied the defendant's request. The jury answered the four questions affirmatively and found the defendant guilty of burglary.

On appeal, the defendant does not claim that the use of special questions is impermissible *per se, see, e.g., United States v. Pforzheimer,* 826 F.2d 200 (2nd Cir. 1987); and, as before the trial court, he does not object to their use in his case. The defendant opposes, however, the form of questions as presented by the trial court judge because it took away the jury's historical prerogative of nullification and invaded its deliberative process. In short, the defendant maintains that the special interrogatories denied the defendant an impartial jury.

The State, on the other hand, recognizes that special interrogatories are not ordinarily used in criminal trials because they may impermissibly "catechize, color or coerce the jury's decision making." *Heald v. Mullaney,* 505 F.2d 1241, 1246 (1st Cir. 1974), *cert. denied,* 420 U.S. 955 (1975). Nonetheless, the State maintains that many courts do not consider special questions in criminal cases as *per se* impermissible. *See United States v. Pforzheimer supra.* Also, the defendant is not entitled to an instruction on jury nullification. *State v. Weitzman,* 121 N.H. 83, 89, 427 A.2d 3, 7 (1981) ("Jury nullification is an historical prerogative of the jury; it is not a right of the defendant."). Therefore, there is no reversible error. The State argues also, in the alternative, that even if the trial court erred, both the submission of the special questions and the denial of the request for instructions on jury nullification were harmless errors beyond a reasonable doubt.

The trial judge justified the use of special questions as a means of simplifying the jury's deliberative process. He explained to the jury that the special findings form was analogous to "painting by the numbers." In *State v. Wentworth,* 118 N.H. 832, 838–39, 395 A.2d 858, 860 (1978), this court prepared a model charge on the State's burden of proof and recommended that trial court judges use the model without adding to the definition of reasonable doubt. The trial judge below did not heed this advice. While he orally communicated to the jury that if it "find[s] that the State has proved all of the elements of the offense charged beyond a reasonable doubt, [it] *should* find the defendant guilty" (emphasis added), he failed to provide similar instructions on the special

findings form. As we explained in *State v. Preston*, 122 N.H. 153, 160, 442 A.2d 992, 996 (1982), the effect of "should" in the model charge is to provide the equivalent of a jury nullification instruction that "even if [the jurors] found that the State proved beyond a reasonable doubt all the elements of the offense charged, they could still acquit the defendant."

The jury in this case did not have such an option. By stating that the jury must find the defendant not guilty if any one of the questions was answered "no," the form suggests that if all answers were "yes," the defendant was guilty and the verdict must follow accordingly. The special findings form was more than an aid to the deliberation process; it also set the tone of the deliberations by directing the jury down a path towards a guilty verdict. *See United States v. Spock*, 416 F.2d 165, 182 (1st Cir. 1969) ("There is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step."). Any such direction to the jury, however subtle, denies the defendant an impartial jury.

The State relies on *State v. Maloney*, 126 N.H. 235, 238–39, 490 A.2d 772, 775 (1985) in support of its argument that the error was harmless beyond a reasonable doubt. In *Maloney*, the trial court judge instructed the jury that it "must" find the defendant guilty if it finds that the State proved its case beyond a reasonable doubt. The defendant appealed, arguing that the combined effect of the trial court's denial of the defendant's request for a jury nullification charge and the trial judge's reading of the reasonable doubt standard constituted reversible error. *Id.* We rejected that argument in *Maloney,* and held any error harmless, because the defendant did not challenge the effectiveness of the charge as to the reasonable doubt standard, and because the defendant was not entitled to a jury nullification instruction.

Unlike the defendant in *Maloney*, the defendant in this case points out, among other things, that the court's special findings form created an impression inconsistent with *Wentworth.*

We hold for the reasons stated that the trial court abused its discretion in submitting, as written, the special questions.

*Reversed and remanded.*

All concurred.