Hillsborough
No. 88-338

THE STATE OF NEW HAMPSHIRE

v.

TIMOTHY BROWN

December 28, 1989

*John P. Arnold,* attorney general (*Andrew W. Serell,* senior assistant attorney general, on the brief and orally), for the State.

*Joanne Green* and *W. Kirk Abbott,* assistant appellate defenders, of Concord (*Ms. Green* on the brief, and *Mr. Abbott* orally), for the defendant.

JOHNSON, J. The defendant, Timothy Brown, was convicted of one count of first degree murder, RSA 630:1-a, I(a), following a jury trial. On appeal, the defendant contends that the Trial Court (*Dunn,* J.) erred in prohibiting the defense from cross-examining Victor Warner, an accomplice, concerning the specific penalty for first degree murder. He further argues that the trial court's charge to the jury, coupled with its refusal to give the defendant's requested jury nullification instruction, effectively removed the nullification option from the jury. For the reasons set forth below, we affirm.

The relevant facts are as follows. On January 24, 1987, the defendant was arrested and charged with the murder of Neil Watson. In a statement to the police the defendant admitted beating Watson on the head after intervening in a fight between Watson and Victor Warner. Warner and the defendant then threw Watson off a bridge. The next day the police arrested Victor Warner and charged him with hindering the defendant's arrest. The police showed Warner the defendant's statement and he agreed with it.

On May 21, 1987, Neil Watson's body was recovered from the Merrimack River in Lowell, Massachusetts. An autopsy was performed, and the medical examiner determined that Watson died from drowning associated with blunt impact injury of the head. Soon after the autopsy, Warner also was charged with Watson's murder.

At some point during the ensuing months, the defendant began denying that he hit Watson. He claimed that it was Warner who beat Watson, and that he had previously lied to the police because he was afraid of Warner.

Pursuant to a plea agreement, Warner pled guilty to manslaughter and was sentenced to fifteen to thirty years in prison in exchange for his testimony at the defendant's trial. He said he originally agreed with the statement that the defendant gave to the

police because it gave the defendant "a chance for self defense," but that the actual events surrounding Watson's death differed from the defendant's account in several important ways. The most significant part of Warner's testimony at trial was his assertion that the defendant's beating of Watson was deliberate and unprovoked, and that the defendant acknowledged hearing Watson yell from the trunk of the car shortly before the defendant and Warner threw the then-unconscious man into the river.

During the cross-examination of Warner at trial, defense counsel inquired about Warner's plea agreement with the State. Defense counsel then questioned Warner concerning the sentence he received after pleading guilty to manslaughter.

"Q. Received a 15 to 30 year sentence?

A. Yeah.

Q. That's the maximum sentence the law allows for manslaughter?

A. Yes, sir.

Q. And you are telling us you are willing to do that under all the circumstances here, and why are you willing to do that?

A. Why? I don't want to take it to trial.

Q. You don't want to be convicted of first degree murder; do you?

A. Second either.

Q. And you understand the maximum penalties for first degree murder and second degree murder?

A. I don't know what second is, but I know what first is.

Q. What's the maximum penalty for first degree murder?"

At this point the State objected and argued that it would be prejudicial to inform the jury of the maximum sentence for the charge faced by the defendant, and that the defense had ample ammunition with which to attack Warner's credibility. The court sustained the State's objection despite defense counsel's contention that the defendant was entitled to cross-examine Warner concerning his incentive to plead guilty to manslaughter and receive a fifteen to thirty year prison sentence.

On appeal, the defendant contends that inquiry into all aspects of Warner's plea agreement was proper in order to expose the full benefit Warner received for testifying at the defendant's trial, and

thus his motivation to lie. The defendant argues that by restricting the vigorous cross-examination of a government witness, especially a witness who is an admitted accomplice, the court violated his right to confrontation as guaranteed by the sixth amendment.

Before addressing the substance of this argument, we must establish whether the sixth amendment issue is properly before us. Although the defendant did not mention the Federal Constitution at trial, it is clear from the record that the issue of the extent to which the defendant was entitled to cross-examine Warner was before the court, and that the court had an opportunity to correct any possible error in its ruling. *See State v. Dube*, 130 N.H. 770, 772, 547 A.2d 283, 284 (1988). Accordingly, we will address this federal constitutional issue.

It is well established that "[t]he sixth amendment to the Federal Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *State v. Chaisson*, 123 N.H. 17, 30, 458 A.2d 95, 103 (1983). This confrontation right includes the right to impeach a witness's credibility through cross-examination. *United States v. Tracey*, 675 F.2d 433, 437 (1st Cir. 1982). One means of attacking a witness's credibility is by "cross-examination directed toward revealing possible biases . . . of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17. This is particularly important where an accomplice testifies for the government. Therefore, in cases like the present one, the trial court should afford the defendant broad latitude in questioning the witness concerning his agreement with the government. *United States v. Lynn*, 856 F.2d 430, 433 (1st Cir. 1988).

It is equally well established, however, that trial judges possess the discretion to limit the scope of cross-examination. *Lynn*, 856 F.2d at 432–33; *State v. Isaacson*, 129 N.H. 438, 440, 529 A.2d 923, 924 (1987). Yet this discretion only becomes operative after the defendant has been allowed to make a threshold level of inquiry which satisfies the sixth amendment. *Tracey*, 675 F.2d at 437.

In the present case, the State contends that the defendant's confrontation right was not violated because he was able to illustrate any possible bias by cross-examining Warner extensively concerning his plea agreement. The State also argues that the defendant was able to attack Warner's credibility with other

evidence such as his lengthy criminal record, and the fact that he stole the murder weapon from his father. However, impeaching the credibility of a witness by exposing prior incidents or actions which reflect a disposition to lie is different from impeaching a witness by exploring the potential of bias. *Lynn*, 856 F.2d at 432 n.3. Therefore, the fact that the defendant was able to introduce other evidence for the purpose of impeaching Warner is irrelevant to the issue of bias which is now before us.

At trial, Warner acknowledged that he was testifying against the defendant pursuant to an agreement which provided that the first degree murder, second degree murder and hindering apprehension charges pending against him would be dismissed, that he would plead guilty to manslaughter and receive a negotiated sentence of fifteen to thirty years at the State Prison, that the State could bring no further charges against him arising from its investigation into the death of Neil Watson, that he would receive immunity for his testimony in court, and that the State would make reasonable efforts to transfer him to an out-of-State correctional facility, should he so request.

■■■ Based on the record before us, we find that the defendant's confrontation right was not violated. He successfully presented his theory of bias to the jury by showing that Warner made a deal with the government, what the terms of the deal were, and that Warner agreed to the deal to avoid a trial on first degree murder and second degree murder charges. Clearly, the defendant created a record from which he was able to argue why Warner was biased "or otherwise lacked that degree of impartiality expected of a witness at trial." *Davis v. Alaska*, 415 U.S. at 318. Therefore, since we find that there was no constitutional violation, we must deal with the defendant's further argument that the trial court abused its discretion when it prohibited the defendant from questioning Warner concerning the penalty for first degree murder. *See Tracey*, 675 F.2d at 437. "Absent abuse of discretion, we will not overturn the trial court's ruling on the scope of cross-examination." *Isaacson*, 129 N.H. at 440, 529 A.2d at 924.

■■■ Before limiting cross-examination a trial judge must balance the prejudicial nature of the proffered testimony against its probative value. *Isaacson*, 129 N.H. at 440, 529 A.2d at 924. In the present case, questioning Warner concerning the penalty for first degree murder would have been probative of the benefit he received for testifying. On the other hand, telling the jury what sentence Warner faced when he was charged with first degree

murder would have informed the jury of the defendant's possible punishment. Since it is well established that a jury should not consider what penalty a defendant may receive if he were convicted, *State v. Beede*, 128 N.H. 713, 715, 519 A.2d 260, 262 (1986), Warner's testimony on this point could have prejudiced the State.

 We find that the trial judge did not abuse his discretion when he weighed these competing factors and determined that it was necessary to restrict the defendant's cross-examination of Warner. Informing the jury that the twenty-three-year-old defendant faced life in prison without parole could have adversely affected the jury's "ability to dispassionately consider the facts presented during trial." *State v. Larrabee*, 377 A.2d 463, 466 (Me. 1977). As we have previously noted, "reference to long incarceration tend[s] to make conviction more difficult." *Beede*, 128 N.H. at 716, 519 A.2d at 262. In addition, the information sought by the defendant was not necessary to illustrate that Warner might have lied. As we explained above, the defendant cross-examined Warner extensively concerning the details of his plea agreement with the State. Furthermore, the jury was instructed by the court that manslaughter is a lesser-included offense of second degree murder, which, in turn, is a lesser-included offense of first degree murder. Therefore, the jury was aware that manslaughter, which carries a maximum sentence of fifteen to thirty years in prison, is two steps removed from first degree murder in terms of severity. With this information, the jury could have surmised that Warner avoided a more serious penalty by agreeing to testify against the defendant, and that he might have lied in order to obtain preferential treatment from the State. It is important to note that it would have been permissible for the defendant to ask Warner whether he knew that the penalties for the crimes charged in the dismissed counts were higher than the sentence he received for pleading guilty to manslaughter. *See United States v. Del Toro Soto*, 676 F.2d 13, 19 (1st Cir. 1982).

The second and final issue raised by the defendant concerns the instructions given to the jury. The defendant argues that the trial court erred in refusing to give the defendant's requested instruction on jury nullification, and that the instruction given by the court improperly removed the nullification option from the jury.

 Jury nullification, the act by which a jury acquits a defendant even if its verdict is contrary to the law and the facts, is an historical prerogative of the jury. *State v. Mayo*, 125 N.H. 200,

203, 480 A.2d 85, 87 (1984); *State v. Weitzman*, 121 N.H. 83, 89, 427 A.2d 3, 7 (1981). However, "[j]ury nullification is neither a right of the defendant, nor a defense recognized by law," *Mayo*, 125 N.H. at 203, 480 A.2d at 87 (citation omitted). Accordingly, a defendant is not entitled to a jury nullification instruction. *State v. Cote*, 129 N.H. 358, 368, 530 A.2d 775, 780 (1987). Instead, it is within the discretion of the trial court "to determine whether or not the facts of a particular case warrant such an instruction when it has been requested by a party." *Mayo*, 125 N.H. at 203, 480 A.2d at 87.

■ In this case, the trial court instructed the jury that it *should* find the defendant guilty of first degree murder if the State met its burden. *See State v. Wentworth*, 118 N.H. 832, 839, 395 A.2d 858, 863 (1978). The effect of "should" in the charge "provide[d] the equivalent of a jury nullification instruction that 'even if [the jurors] found that the State proved beyond a reasonable doubt all the elements of the offense charged, they could still acquit the defendant.'" *State v. Surette*, 130 N.H. 531, 535, 544 A.2d 823, 825 (1988) (quoting *State v. Preston*, 122 N.H. 153, 160, 442 A.2d 992, 996 (1982)). Nothing in this case warranted a more specific instruction on the jury's nullification prerogative. Therefore, we find no abuse of discretion by the trial court.

■ The defendant also argues that a specific part of the trial court's charge removed the nullification option from the jury. However, defense counsel failed to object at trial and call the court's attention to the portion of its charge which is now challenged. Since the trial court was not afforded an opportunity to correct an alleged error in its instructions, *State v. Johnson*, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988), the issue was not properly preserved, and we will not consider it. *Id.*

*Affirmed.*

SOUTER, J., concurs in the result only; the others concurred.