THE STATE OF NEW HAMPSHIRE

v.

THOMAS E. ALLISON

July 31, 1991

*John P. Arnold,* attorney general (*William H. Lyons,* senior assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco P.A.,* of Portsmouth (*Stephen T. Jeffco* on the brief and orally), for the defendant.

JOHNSON, J. The defendant was convicted of two counts of negligent homicide following a jury trial in Superior Court (*Mohl,* J.). In

this appeal, the defendant asserts that the State improperly made an argument to the jury based on facts not disclosed in its response to the defendant's motion for a bill of particulars, that during its closing argument the State argued facts not in evidence, and that the trial court erred in denying the defendant the right to cross-examine the State's key witness on an issue relating to possible bias. We reverse and remand for a new trial.

The relevant facts are as follows. On the afternoon of June 5, 1988, the defendant was driving east on Route 51 in Hampton. At the same time, William Peach was driving west on Route 51. Behind Peach in the westbound lane was a car operated by Carl Bensen. When Peach, the only witness to the accident who testified at trial, first saw the car operated by the defendant, the defendant was driving east in the westbound lane; the defendant was evidently passing two other cars also travelling eastward. Prior to trial, Peach told the Hampton Police Department the day after the accident that the defendant's vehicle was 300 yards away when he first observed it. He then reiterated this same distance at a deposition five days before trial. However, at trial, Peach testified that the distance between his car and the defendant's car was approximately 700 yards when he first saw the defendant's car. This testimony was based on Peach's return to the accident scene with police officers after the deposition and just prior to the trial. One of the officers testified that they measured the distance to be about one-half mile.

The defendant's car never returned to the eastbound lane. Peach avoided a collision by pulling onto the shoulder. The defendant's car then collided with the car driven by Bensen. One passenger in each of the colliding cars was killed.

In his statements made prior to trial, both to the police and at deposition, Peach maintained that, to the best of his recollection, approximately four seconds elapsed from the time he first saw the defendant's vehicle until the defendant's vehicle passed him. However, at trial he testified: "I would say 8 to 10, in that area." These are the evidentiary *facts* the jury had before them on the issue of the amount of time that elapsed between the time Peach first saw the defendant's vehicle and the time their respective vehicles passed each other.

The defendant was subsequently indicted on two nearly identical counts of negligent homicide. RSA 630:3. In relevant part, one of the indictments alleges that Allison

> "did negligently operate his motor vehicle east bound entirely in the west bound lane of Route 51 in Hampton, New

Hampshire, and did negligently fail to keep his vehicle in the east bound lane, and did negligently fail to return his vehicle to the east bound lane, and did negligently fail to take evasive action but did rather, negligently operate his motor vehicle directly into oncoming west bound traffic thereby striking a vehicle traveling in the west bound lane."

On September 13, 1988, the defendant filed a motion for a bill of particulars, requesting the following:

"1. A detailed description of each specific act, omission or occurrence which the State contends caused or contributed to the death of Patricia M. Bensen and/or Dana L. Bruder, or to the injuries alleged suffered by them;

2. A detailed description of each specific act, omission or occurrence which the State contends constituted negligence, recklessness or reckless operation;

3. The time of day of each alleged act, omission or occurrence referred to in paragraphs one and two above;

4. The detailed, specific place and location where each alleged act, omission or occurrence referred to in paragraphs one and two above took place;

5. A detailed description of all other acts or occurrences of the defendant alleged to have been in furtherance of the alleged crimes or alleged to have otherwise contributed to the death of Patricia M. Bensen and/or Dana L. Bruder or the injuries suffered by them;

6. *The amount of time* each alleged act, occurrence or offense involved[.]"

(Emphasis added.) The State did not object to the motion, which the Superior Court (*Gray,* J.) granted on October 5, 1988, but the State did not thereafter file a bill of particulars. Rather, it orally represented that it could not provide more specific information as it was unaware of further details.

In a chambers conference immediately prior to closing arguments, the State indicated for the first time that it planned to argue that 16.5 seconds elapsed between the time Peach first saw the defendant's vehicle and the time their respective vehicles passed each other. This figure was calculated using three figures: the initial distance between the cars based on Peach's return to the scene as set forth above, which according to the measurements made by the police officers was about one-half mile; the speed of Peach's vehicle, which

Peach testified was approximately fifty-five miles per hour; and the speed of the defendant's vehicle, which the State argued the jury could infer to be also fifty-five miles per hour, but upon which there was no evidence. The defendant objected to this argument. The court overruled the objections, and the State made the argument in its closing to the jury.

On appeal, the defendant first argues that the State's failure to make a responsive reply to his motion for a bill of particulars precluded the State from suggesting to the jury either the speed of the defendant's vehicle or the 16.5-second time period. In response, the State contends that the defendant's failure to object to proceeding to trial without a bill of particulars constituted a waiver of any objection on this issue.

■ "The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense *and to enable him to prepare an intelligent defense." State v. Superior Court*, 106 N.H. 228, 232, 208 A.2d 832, 835 (1965) (emphasis added). "[A] bill of particulars strictly limits the prosecution to proof within the area of the bill." *United States v. Armco Steel Corp.*, 255 F. Supp. 841, 846 (S.D. Cal. 1966); *see State v. Boire*, 124 N.H. 622, 624, 474 A.2d 568, 569–70 (1984).

The State's representation that it could not provide additional particulars was, in effect, a bill of particulars, albeit a rather unhelpful one. *See State v. Boire, supra* at 624–25, 474 A.2d at 569–70. The fact that the State's assertion was of a negative nature is irrelevant. *Cf. Commonwealth v. Bartman*, 240 Pa. Super. 495, 508–09, 367 A.2d 1121, 1127–28 (1976) (prosecution was bound by its assertion in a bill of particulars that it possessed *no* confessions or admissions of the defendant).

■ The defendant was entitled to rely on the State's representation. *See United States v. Flom*, 558 F.2d 1179, 1185 (5th Cir. 1977); *Commonwealth v. Bartman, supra* at 509, 367 A.2d at 1129. The State could at any time have modified its representation, *see State v. Boire, supra* at 624, 474 A.2d at 569, and filed a bill of particulars with some substantive content. *See United States v. Rogers*, 617 F. Supp. 1024, 1030 (D. Colo. 1985) ("[i]f the government is unable to respond in precise terms at this time because it is uncertain as to the facts, the government should respond as precisely as it is able and thereafter adhere to a continuing duty to disclose promptly as additional or more precise facts become known"); *cf. Daigle v. City of Portsmouth*, 131 N.H. 319, 328–29, 553 A.2d 291, 297 (1988) (continu-

ing duty to comply with discovery order). Filing a substantive bill would have allowed the State to expand the scope of the issues properly presentable at trial, although perhaps entitling the defense to a continuance. Cf. *State v. Wells*, 429 So. 2d 502, 505 (La. Ct. App.) (continuance provided for by statute if defendant prejudiced), *writ denied*, 437 So. 2d 1136 (La. 1983); *People v. Thomas*, 432 N.Y.S.2d 317, 318 (N.Y. City Crim. Ct. 1980) (same). Because the State chose not to avail itself of this option, it was extremely limited with respect to the use of evidence in those areas covered by the defendant's motion. Cf. *State v. Boire, supra* at 624, 474 A.2d at 569–70.

■ One of the factual areas in which the State maintained it could not provide further particulars was "[t]he amount of time each alleged act, occurrence or offense involved." This representation by the State, together with the fact that the indictments themselves alleged no such details, precluded the State from utilizing the duration of alleged acts in proving its case. Obviously, the amount of time which elapsed between the moment when Peach first saw the defendant's vehicle and the moment when their vehicles passed each other falls within the ambit of the defendant's request for particulars. Therefore, the trial court erred in allowing the State, over the defendant's objection, to argue in its closing that the relevant time span was 16.5 seconds.

The trial court's error was exacerbated by the timing of the State's argument. By waiting until just before its closing argument to disclose its intention to use the time information, the State greatly limited the opportunity of the defendant to attack the accuracy and relevance of the 16.5-second figure.

■ We do not agree with the State that the defendant waived any objection on these grounds by failing to take further action prior to trial. The defendant moved that the State be required to file a bill of particulars to provide certain information. The State did not object to this motion, and the trial court granted it. The State thereafter maintained that it had no further particulars. It was unnecessary for the defendant to return to the court asking for an order requiring the State to do what it was already required to do or to have the case dismissed. Although these avenues were open to the defendant, *see United States v. Seafarers International U. of No. Amer.*, 343 F. Supp. 779, 782–84 (E.D.N.Y. 1972), the defendant could and did opt to proceed to trial on the basis of the representations made by the State.

In the alternative, the State argues that it provided the defendant with the necessary particulars during a hearing on a motion *in*

*limine.* At that time, the State essentially stated that although it did not plan on introducing evidence regarding the speed of the defendant's vehicle, it reserved the right to argue to the jury that the speed could be inferred from the circumstances. The State contends that this statement gave the defendant notice of how speed could be established and, consequently, that the 16.5-second time period could be argued.

This statement was, at best, only partially effective in providing the defendant with notice of the State's intentions. It provided no direct notice of the State's intention to argue the existence of the 16.5-second time interval and that figure's impact on the issue of whether the defendant was negligent in failing to return to his own lane. Although the speed of the defendant's vehicle can be used as a factor in calculating the relevant time interval, it cannot be said that the defendant was fairly put on notice that this would actually be done, given the State's representation that it had *no* information on the subject. (Emphasis added.) In that respect, no modification of the State's representation was made until after the close of evidence.

■ Nor do we find any merit to the final argument of the State, that the defendant waived his objection by waiting until closing argument to object, rather than initially objecting to the evidence from which the time interval in question was calculated; namely, evidence of the speed of the vehicles and the distance involved. The defendant was not objecting to the introduction of evidence regarding speed and distance; rather, he was objecting to the use of that evidence to argue an amount of time which passed between two events, where the prosecution represented it had no particulars relating to that amount of time.

■ In summary, we hold that the State is bound by its representations made in response to a motion for a bill of particulars. If the State believes it should not be required to provide some or all of the information asked for, it should object. The State should not, as it did here, assert that it has no responsive information and nonetheless employ such information at trial. The trial court should have held the State to its own representations, and erred in denying the defendant's objection when the State attempted to use evidence it had represented was unavailable.

■■ To rule that this error was harmless, we must be able to find beyond a reasonable doubt that the error did not affect the verdict. *See State v. Elwell*, 132 N.H. 599, 607, 567 A.2d 1002, 1007

(1989). The defendant was entitled to rely on the State's representation. He alleges that he did so, and that had the State properly complied with the bill of particulars and informed him of its intention to employ the amount of time which he spent in the westbound lane, he would have obtained evidence, such as an accident reconstructionist, to counteract the State's argument. Our review of the record reveals that the use of the 16.5-second figure was important to the State's argument. Therefore, we cannot say that, beyond a reasonable doubt, the court's error did not affect the verdict.

In view of this holding, we need not address the other issues raised by the defendant. Nevertheless, in the interest of judicial economy, we will briefly address the validity of the defendant's claim that the trial court erred in denying the defendant the opportunity to cross-examine Peach on an issue relating to bias, as this issue is certain to arise in a new trial. *See State v. Ramos*, 121 N.H. 863, 867, 435 A.2d 1122, 1124 (1981). It is important to note, again, that Peach materially changed his testimony from his initial statements to his in-court testimony, as to the distance between his vehicle and that of the defendant.

Prior to trial, the State moved *in limine* to prevent the defendant from introducing evidence relating to possible bias on the part of Peach. The State asked the trial court to exclude: (1) the questioning of Peach "pertaining to the existence of a civil writ in which he is a defendant as a result of his alleged negligence in the same accident," and (2) the questioning of any witness concerning the sending to Peach of a division of motor vehicles notice of hearing, which hearing later apparently was cancelled. The defendant opposed these motions. The trial court ruled, over the defendant's objection, that he could cross-examine Peach on the subject of the civil suit, but excluded testimony pertaining to the division of motor vehicles proceedings.

The defendant contends that the facts suggest that the division of motor vehicles proceedings may have been dropped as a result of Peach's cooperation with the authorities. He argues on appeal that the trial court's ruling denied him his sixth amendment right to cross-examine the witnesses against him, and that the testimony which would have been elicited would have been more probative than prejudicial. In response, the State argues that testimony on the issue would have been irrelevant and highly prejudicial. In addition, the State asserted at oral argument that the defendant was not entitled to allege bias on this basis without a showing that there was a *quid pro quo* arrangement between Peach and the State.

■ "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *see State v. Brown*, 132 N.H. 520, 524, 567 A.2d 544, 546 (1989). This includes the right to expose the possible biases of such witnesses by cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *State v. Brown, supra* at 524, 567 A.2d at 546–47. This cross-examination is subject to limitation at the discretion of the trial judge. *State v. Brown, supra* at 524, 567 A.2d at 547. However, the defendant may not be denied the opportunity to make at least a threshold level of inquiry. *State v. Brown, supra* at 524, 567 A.2d at 547; *see Delaware v. Van Arsdall, supra* at 679.

In the case at bar, the defendant was never given the chance to make this threshold inquiry regarding the termination of the division of motor vehicles proceedings. The trial court allowed no inquiry on the subject.

■ We are not persuaded by the State's argument, without citation, that no inquiry need be allowed absent evidence of some agreement between the State and the witness. There is authority for the proposition that a complete lack of evidence of either an agreement between the State and the witness, or an expectation of leniency on the part of the witness, may limit the extent of cross-examination required to be allowed. *See Warden v. Wyrick*, 770 F.2d 112, 116 (8th Cir.), *cert. denied*, 474 U.S. 1035 (1985); *Reed v. United States*, 452 A.2d 1173, 1177 (D.C. 1982), *cert. denied*, 464 U.S. 839 (1983). However, both of these cases involved limitation of the extent of cross-examination on the issue of government leniency, not an absolute bar. Thus, at the least, a suggestion of bias in favor of the State may be made, appropriately leaving it up to the trier of fact to determine the weight of such an allegation.

■ Even absent constitutional considerations, the trial judge abused his discretion in granting the State's motion *in limine*. The New Hampshire Rules of Evidence allow the exclusion of relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403. The evidence of possible bias due to government leniency sought by the cross-examination of Peach does not meet this standard. Although the evidence was perhaps only minimally probative, the State provided no argument as to *why* the evidence sought by the desired

cross-examination would be unfairly prejudicial, confusing, or misleading, nor do we believe that it would be. Furthermore, a threshold inquiry could be brief and not unduly burdensome to the interests of judicial economy. The fact that the defendant was allowed to cross-examine Peach on the civil action does not render cross-examination on the government leniency issue cumulative. Although both lines of questioning are probative of bias, they relate to two completely different motives for bias. Whatever probative value the defendant's cross-examination of Peach on the issue of government leniency would have had, the State did not show that value was substantially outweighed by counterveiling considerations.

 Finally, we note that the defendant's remaining argument on appeal, that the State in its closing argued facts not in evidence, is not without substantive merit. In attempting to explain the discrepancy between Peach's trial testimony as to the distances involved and his prior assertions, the State argued as follows:

> "I would suggest to you folks that the ability to estimate sections of road in terms of hundreds of yards is not an inborn trait with people. It is something that perhaps many people have a great deal of difficulty with. The training I received in the Army as a forward observer involves particularly that particular skill."

Clearly, this statement asserted facts not in evidence, *see State v. Lake*, 125 N.H. 820, 822, 485 A.2d 1048, 1050 (1984), and this portion of the State's closing argument was improper.

*Reversed and remanded.*

HORTON AND THAYER, JJ., dissented; the others concurred.

HORTON, J., dissenting: The crux of my disagreement on the dispositive issue in this case is my disagreement with the suggestion that the State's closing argument is, in some way, at material variance with the "bill of particulars" found to exist in this case. I could agree, and will assume, that a motion for such a bill was granted and that a sort of negative bill of particulars came into existence when the State said it had nothing to add by way of a bill of particulars. I would agree also that an objection, just prior to closing argument, to notice of intent by the State to argue facts which are at material and prejudicial variance with an indictment, or with a bill of particulars thereon, would preserve the issue for appeal. However, I am at a loss to see how the argument of a hypothesis, well within the ambit of the

indictment and based, as far as factually founded, on facts admitted in the case without objection, provides a basis for reversal.

I am troubled by the use today's opinion makes of a bill of particulars. Since the State did not object to the motion for the bill and the court granted the motion, we are bound by its existence for all proper purposes. A bill of particulars is appropriate where information beyond the indictment is necessary to protect the defendant against double jeopardy and to enable him to prepare an intelligent defense, *State v. Superior Court*, 106 N.H. 228, 232, 208 A.2d 832, 835 (1965); it is not appropriate for discovery, to compel disclosure of the details of evidence on which the State will rely, *id.*, or the legal theories the State may choose to pursue, *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir.), *cert. denied*, 449 U.S. 1015 (1980). Use of a bill of particulars by the defendant as a discovery device, and the State's handling of a bill of particulars in the cavalier way it was done in this case, leads to the problems spread on these pages.

The majority correctly describes the closing argument hypothesis. The State recounts testimony regarding evidence of the speed of the Peach (witness) car and the distance between Peach and the defendant at first observation by Peach. It then hypothesizes that the defendant is operating at the legal speed. Calculating from the known and the unknown assumption with an unchallenged simple mathematical formula, it arrives at a hypothetical time from observation to impact. The State does not argue this as a fact. It advances the time period as one fair and logical inference from what is known or could be found. This suggested inference is, in no way, a determined fact capable of being particularized as "the amount of time each alleged act, occurrence or offense involved," as requested in the motion for bill of particulars. It is not only unfair to bind the State to this in proving its case; it is also totally illogical to put within the purview of facts to be proven beyond a reasonable doubt a factual hypothesis relying on an assumption for which no evidence exists. That hypothesis is not a "fact" that the jury must find. There is one crucial part of the equation that is not in evidence and can only be considered hypothetically. Furthermore, as argument, it is not, and is not submitted as, evidence in the case. Nor, as a theory of the case, could it have been compelled by the bill of particulars. *Burgin*, 621 F.2d at 1359. Thus, the State was not limited by the bill of particulars in making this argument.

One of the known elements, the initial distance between the cars, was redetermined shortly before trial, and this fact was not disclosed to the defendant. It was admitted, without objection, at trial. Al-

though its disclosure prior to trial would be good prosecutorial practice, it is not compelled by a fair reading of the "bill of particulars." The motion, although requesting specific disclosure of elapsed time, makes no specific mention of distance.

Rejecting the stated ground for reversal, I am compelled to consider also the dicta suggesting alternative grounds for reversal.

The first is the ruling of the trial court on the motion *in limine* denying the defendant the right to inquire of Peach the circumstances involved in his receipt of a division of motor vehicles notice of hearing and its subsequent cancellation. If necessary, the majority would hold that, without a showing of relevance or any offer of proof, the defendant has a constitutional right to raise the inference of possible bias of a witness by threshold inquiry *at trial* into any issue that may conceivably create an inference of bias. This is true no matter how innocent the known facts, no matter how lacking the proposed proof path may be in probative value, and no matter how prejudicial the evidence may be in matters other than the suggested bias. This threshold inquiry is permitted even where there is only an unsupported inference that the State could exert power over a witness's freedom. *Davis v. Alaska*, 415 U.S. 308, 317–18 (1974) (defendant's right to cross-examine overrides State's interest in certain areas). The authorities seem to support such a procedure on the slightest hint of bias, *United States v. Garrett*, 542 F.2d 23, 25 (6th Cir. 1976); *State v. Freeman*, 473 A.2d 1149, 1153–54 (R.I. 1984), unless it is undisputed that no bias exists, *see United States v. Benavidez*, 664 F.2d 1255, 1262 (5th Cir.), *reh'g denied*, 671 F.2d 1380, *cert. denied*, 457 U.S. 1121, 1135 (1982), or if ample evidence exposing the possible bias has been put before the jury, *see United States v. Alonso*, 740 F.2d 862, 875 (11th Cir.), *cert. denied*, 469 U.S. 1166 (1984); *United States v. Alvarez-Lopez*, 559 F.2d 1155, 1160 (9th Cir. 1977). Although I disagree with this use of unsupported inference and would like to see it reexamined, I cannot fault the majority in its analysis of precedent. In this case, the defendant made no claim of such right. The matter was pursued as a pure case of trial court discretion. The sixth amendment claim is not properly preserved. *State v. Wisowaty*, 133 N.H. 604, 607, 580 A.2d 1079, 1081 (1990).

Second, the majority holds that counsel for the State argued facts not in evidence, presumably to the material prejudice of the defendant. Counsel was describing the difficulty that people have in estimating distance. He suggested that it does not come naturally and is an acquired skill, mentioning his training as a forward observer as an example. The fact that counsel for the State was trained to meas-

ure distance has absolutely nothing to do with the case, is not evidence in the case, on or off the record. The defendant made no objection to the statement. *State v. Laliberte,* 124 N.H. 621, 621, 474 A.2d 1025, 1025 (1984). There is no serious prejudice to the defendant. *State v. Bujnowski,* 130 N.H. 1, 532 A.2d 1385 (1987).

I respectfully dissent. The verdicts should be affirmed.

THAYER, J., joins in the dissent.