Hillsborough
No. 91-280

THE STATE OF NEW HAMPSHIRE

v.

JUAN RODRIGUEZ

December 23, 1992

*John P. Arnold*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*Michael K. Skibbie*, assistant appellate defender, by brief and orally, for the defendant.

HORTON, J.   The defendant, Juan Rodriguez, appeals his conviction in the Superior Court (*Dalianis*, J.) for second degree murder. He argues that the superior court violated his rights under the sixth amendment to the United States Constitution by restricting his efforts to impeach a State's witness on cross-examination. We affirm.

The defendant was convicted of fatally stabbing Jose Aldaba near the Moose Club Lodge in Nashua. The victim and a friend, Jose Segoviano Cruz [hereinafter "Segoviano"] attended a dance at the Moose Club on the evening of December 9, 1989. Soon after entering the club, the victim and Segoviano encountered the defendant and his friend, Daniel Cecenas. The four parties exchanged verbal threats, and Cecenas struck Segoviano. The victim and Segoviano left the club shortly before the dance ended. While walking to Segoviano's car, they again encountered the defendant and Cecenas, who were standing with a group of men near Cecenas' truck. Cecenas, his friend Marcelo Vidana, and several others chased Segoviano back into the club. Meanwhile, the defendant and another man, Andres Ramirez, began fighting with the victim. Ramirez struck the victim with a metal bar, and then he and the defendant chased the victim to a nearby intersection and knocked him to the ground. While the victim was lying on the ground, the defendant stabbed him several times. The victim was taken to the hospital, where he died a short time later.

At trial, the State called Segoviano as a witness. He testified on direct examination about the altercation in the Moose Club, and described the events leading up to the defendant's attack upon the victim. During cross-examination, the defendant questioned Segoviano about a prior conversation with Marcelo Vidana in which Segoviano allegedly indicated that Cecenas, not the defendant, had stabbed the victim. Although Vidana was not available to testify in court, the defendant had two affidavits signed by Vidana stating that Segoviano told him that Cecenas had stabbed the victim. The defendant twice asked Segoviano if he had told anyone that he had seen someone other than the defendant stab the victim. Segoviano responded that he had not. The following inquiry ensued:

[Defense Counsel]: And you saw Daniel [Cecenas] stab, didn't you? Isn't that the truth?

The Interpreter: Can you repeat the question?

[Defense Counsel]: You saw Daniel stab, didn't you? Tell the jury the truth.

[Segoviano]: Stab? No.

[Defense Counsel]: And that's as truthful as everything else you've said here today?

[Segoviano]: I never saw Daniel stab.

[Defense Counsel]: Did you ever tell anybody you saw him stab?

[Segoviano]: No.

[Defense Counsel]: You're telling this jury you never told Marcelo Vidana that you saw him stab—

[State Counsel]: Objection.

The trial court sustained the State's objection. According to the trial court, if Vidana were available to testify in court, he could be questioned directly "about matters which might impeach the credibility of Mr. Segoviano." The court added, however, that it would not allow the defendant to impeach Segoviano's credibility "on the basis of a piece of paper," even though the paper was probably "a good-faith piece of paper."

On appeal, the defendant claims that in his effort to impeach Segoviano, he should have been allowed to *fully* cross-examine the witness about his alleged statement to Vidana. According to the

defendant, the sixth amendment guaranteed him the right to ask Segoviano specifically and directly whether he told Vidana that Cecenas stabbed the victim. The defendant concedes that if Segoviano had denied making the statement, he could not have contradicted the witness's response: Vidana was unavailable to testify, and his affidavits were inadmissible hearsay. The defendant argues, however, that because he had a good faith basis to believe that Segoviano made the statement, he should have been allowed to continue the inquiry even though the statement was not capable of extrinsic proof. The State in response argues that the defendant was not prevented from effectively cross-examining Segoviano about the prior statement, and that the trial court properly restricted the cross-examination once Segoviano denied making the statement. Allowing the defendant to continue this line of questioning, the State claims, would have been repetitive, and would have implied to the jury that the defendant possessed evidence that Segoviano was lying when he denied making the statement. According to the State, since Vidana was not available to substantiate that implication, further questioning would have been prejudicial to the State.

It is "well established" that the sixth amendment guarantees criminal defendants the right to be confronted with the witnesses against them. *See State v. Brown*, 132 N.H. 520, 524, 567 A.2d 544, 546 (1989). This right is guaranteed to defendants in State, as well as in federal, proceedings. *See State v. Chaisson*, 123 N.H. 17, 30, 458 A.2d 95, 103 (1983). A defendant's confrontation right triggers a correlative right to impeach a witness's credibility through cross-examination. *See Brown*, 132 N.H. at 524, 567 A.2d at 546. As cross-examination is the principal means by which a defendant can test a witness's credibility, *see Chaisson*, 123 N.H. at 31, 458 A.2d at 103, the right to cross-examine adverse witnesses in criminal cases is "fundamental." *State v. Ramos*, 121 N.H. 863, 866, 435 A.2d 1122, 1124 (1981).

Though fundamental, a criminal defendant's cross-examination right is not unlimited. Trial courts possess broad discretion to limit the scope of cross-examination to preclude repetitive or unduly harassing interrogation. *See Chaisson*, 123 N.H. at 31, 458 A.2d at 103 (*quoting Davis v. Alaska*, 415 U.S. 308, 316 (1974)). The United States Supreme Court has recognized that the sixth amendment guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to

whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citations omitted). In determining the limits of cross-examination, a trial court must balance the prejudice, confusion, and delay of the proffered testimony against its probative value. *See State v. Isaacson*, 129 N.H. 438, 440, 529 A.2d 923, 924 (1987) (citations omitted). Accordingly, while a trial court may not completely deny a defendant the opportunity to cross-examine a witness on a proper matter of inquiry, *see Ramos*, 121 N.H. at 867, 435 A.2d at 1124, it may limit cross-examination after allowing a "threshold level of inquiry" that satisfies the sixth amendment, *Brown*, 132 N.H. at 524, 567 A.2d at 547.

We conclude that the trial court did not err by restricting the defendant's inquiry into the prior inconsistent statement. The defendant had several opportunities to ask Segoviano if he had seen someone other than the defendant stab the victim, or had made a statement to that effect. This clearly constituted a threshold inquiry that satisfied the sixth amendment. *See Brown*, 132 N.H. at 524, 567 A.2d at 547. Once Segoviano denied having made the statement, the defendant had no evidence with which to contradict his response. By repeatedly questioning Segoviano about the statement, the defendant implied that he had evidence that Segoviano was lying. Moreover, as the statement concerned a central issue in the case—the identity of the victim's assailant—the defendant's questioning may have inferred also that Cecenas, not the defendant, stabbed the victim. Such an inference would have been improper. When a party has been afforded the opportunity to challenge a witness's credibility on cross-examination, and further questioning into the matter would imply the existence of a material, prejudicial fact, the court may require that the fact be capable of extrinsic proof.

Past decisions by this court support such a rule. *See State v. Bass*, 93 N.H. 172, 176, 37 A.2d 7, 10 (attorney should not question witness in manner suggesting prejudicial facts unless there is or will be evidence of such facts), *cert. denied*, 322 U.S. 763 (1944); *Carbone v. Railroad*, 89 N.H. 12, 17–19, 192 A. 858, 862–63 (1937) (reversible error for counsel, during examination of witness, to make statement of material facts of which there is no evidence); *cf. State v. Doran*, 117 N.H. 491, 494–95, 374 A.2d 950, 952 (1977) (State's effort to impeach witness about prior inconsistent statements implying material, prejudicial facts held proper; State had evidence that such statements had been made). Other jurisdictions concur. *See, e.g., United States v. Glynn*, 627 F.2d 39, 43 (7th Cir. 1980) (defendant

could not attempt to impeach State's witness through reference to prior statement unless defendant could present evidence to contradict witness's answer); *United States v. Silverstein*, 737 F.2d 864, 868 (10th Cir. 1984) (reversible error for prosecution to use impeachment as a vehicle for bringing otherwise inadmissible evidence to the jury's attention); *United States v. Brown*, 519 F.2d 1368, 1370 (6th Cir. 1975) (in order to impeach a witness's credibility in a manner implying the existence of material facts, prosecution must have evidence to prove those facts).

The defendant nonetheless claims that he should have been allowed to further question Segoviano about the prior statement because Vidana's affidavits provided a good faith basis to believe that such a statement had been made. He calls our attention to several federal cases allowing a good faith basis to justify questions asked on cross-examination. *See, e.g., United States v. Malik*, 928 F.2d 17, 24 (1st Cir. 1991) (questions asked of defense witness were proper provided the government had good reason to believe the facts the questions assumed were true); *United States v. Peterson*, 808 F.2d 969, 978 (2d Cir. 1987) (upon demand for an offer of proof, the government must provide "some good faith basis" for questions that allege adverse facts). *See generally* I ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 4–7.6(d), at 4.90 (2d ed. 1980) ("[i]t is unprofessional conduct for a lawyer to ask a question which implies the existence of a factual predicate for which a good faith belief is lacking"). We do not adopt this "good faith basis" standard, which would remove the requirement of ability to prove the factual predicate, in a case such as this where the defendant's sixth amendment rights have been satisfied by threshold inquiries. It was within the trial court's discretion to restrict further questioning unless the defendant had admissible evidence with which to contradict the witness's testimony.

*Affirmed.*

All concurred.