Merrimack
No. 99-570

THE STATE OF NEW HAMPSHIRE

v.

KENNETH MUNSON

August 28, 2001

*Philip T. McLaughlin*, attorney general (*Christopher H.M. Carter*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief, and *David Rothstein*, appellate defender, of Concord, orally, for the defendant.

NADEAU, J. The defendant, Kenneth Munson, appeals his conviction by a jury on one count of first degree murder, *see* RSA 630:1-a (1996), arguing that the Superior Court (*Manias*, J.) erred in: (1) precluding cross-examination of a State's witness regarding a court order finding her incompetent to stand trial; and (2) instructing the jury on accomplice liability when, according to the defendant, the indictment only charged him as a principal. We affirm.

The relevant facts follow. On June 6, 1998, Leslie Noonan informed the Concord Police Department that she had been a witness to a crime. Specifically, she described seeing two men beat a third man to death and then dispose of his body in the Merrimack River. Based upon the information provided by Noonan, the police searched the river and discovered the body of the victim.

The next day, the defendant and Michael Gourlay were arrested in Concord. Police investigations revealed that earlier on June 6, the defendant, Gourlay and Noonan accompanied the victim to a remote area on the river, stole his watch and wallet and beat him to death. Munson, Gourlay and Noonan were all indicted on first degree murder charges.

In January 1999, the State negotiated a plea agreement with Noonan whereby she would enter pleas of guilty to conspiracy to commit murder and to hindering apprehension in exchange for testifying against the defendant and Gourlay. Under the agreement, Noonan would have served a seven-and-one-half to fifteen-year sentence on the conspiracy charge, and a two-and-one-half to seven-year sentence on the hindering apprehension charge.

After the plea agreement was negotiated, Noonan's counsel raised the issue of Noonan's competency to stand trial. Following competency evaluations, the State and Noonan filed a joint motion to find her incompetent to stand trial. The superior court granted this motion in March 1999. Accordingly, Noonan was committed to the New Hampshire State Prison's Secure Psychiatric Unit, with her status to be reviewed at least every five years. *See* RSA 651:11-a (1996). Subsequently, the State and Noonan entered into a use immunity agreement with respect to Noonan's testimony in any proceedings against the defendant or Gourlay. *See* RSA 516:34 (1997).

Prior to the defendant's trial, the superior court issued an order finding Noonan competent to testify. Subsequently, the State filed a motion *in limine* to exclude evidence that Noonan had been ruled incompetent to stand trial because, according to the State, the evidence was irrelevant and its prejudicial effect outweighed any probative value in that it would confuse the jurors. The defendant objected, arguing that the ruling that Noonan was incompetent to stand trial placed her in a better position for release from custody than she would have been under the plea agreement, and, therefore, it was relevant to establish her bias in favor of the State. The superior court granted the State's motion, but specifically noted that the defendant would be permitted to cross-examine Noonan regarding both the plea agreement and the grant of use immunity. In its written order, the superior court reasoned that "[t]he minimal probative value of the incompetency ruling [was] substantially outweighed by the danger that the jury [would] misuse or misunderstand the significance of the ruling in evaluating Ms. Noonan's testimony."

On appeal, the defendant argues that the superior court's order limiting cross-examination violated his constitutional right to confront an adverse witness regarding her potential biases. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. We address the defendant's argument first under our State Constitution, citing federal law only to aid our analysis. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). Because the Federal Constitution offers the defendant no greater protections in this area, we need not undertake a separate federal analysis. *State v. Dixon*, 144 N.H. 273, 278 (1999).

The State Constitution provides the defendant "a right . . . to meet the witnesses against him face to face, and be fully heard in his

defense." N.H. CONST. pt. I, art. 15. "[C]riminal defendants [have] the right to be confronted with the witnesses against them . . . [and] a correlative right to impeach a witness's credibility through cross-examination." *State v. Rodriguez*, 136 N.H. 505, 508 (1992) (citations omitted). The confrontation right "includes the right to expose the possible biases of such witnesses by cross-examination." *State v. Allison*, 134 N.H. 550, 558 (1991). "This cross-examination is subject to limitation at the discretion of the trial judge." *Id.* "In determining the limits of cross-examination, a trial court must balance the prejudice, confusion, and delay of the proffered testimony against its probative value." *Rodriguez*, 136 N.H. at 509. Thus, "while a trial court may not completely deny a defendant the opportunity to cross-examine a witness on a proper matter of inquiry, it may limit cross-examination after allowing a threshold level of inquiry that satisfies the sixth amendment." *Id.* (citation and quotation omitted).

In *State v. Brown*, the defendant was on trial for first degree murder, and sought to cross-examine an accomplice who was initially indicted for first degree murder, but later agreed to plead guilty to manslaughter. *State v. Brown*, 132 N.H. 520, 522 (1989). At trial, the defendant asked the accomplice about the maximum penalty for first degree murder. The trial court disallowed these questions because it would have influenced the jury to know the maximum sentence for first degree murder prior to determining whether the State had proved its case against the defendant. *Id.* at 523. We affirmed, reasoning that because the defendant was allowed to ask the accomplice about the plea agreement, he was able to create "a record from which he was able to argue why [the witness] was biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.* at 525 (quotation omitted).

Similarly, here, the defendant was able to create a record from which he could argue that Noonan was biased against him. The defendant was permitted to cross-examine Noonan regarding the plea agreement and her grant of immunity. Through these areas of inquiry, the defendant established the threshold for a finding of bias in that Noonan's testimony could not be used against her, and she would not face trial for her participation in the criminal activity.

The defendant contends, however, that the immunity agreement did not prevent the State from prosecuting Noonan for first degree murder; rather it only prevented the State from using her testimony in the defendant's trial against her. The defendant theorizes that

Noonan's motive to lie stems from a belief that if displeased with Noonan's testimony, the State could "reopen" the issue of competency and force her to stand trial for first degree murder.

■ The defendant's argument is flawed. While the State assented to the motion to find Noonan incompetent to stand trial, the *court* was the final arbiter of Noonan's capacity to stand trial; the State has no discretion to change Noonan's status. *Cf. State v. Haycock*, 146 N.H. 5, 8 (2001) (noting that the superior court should not abdicate its judicial responsibility to determine whether a criminal defendant is competent to stand trial). Accordingly, any inquiry into the incompetency ruling has only minimal probative value, and the risk that it would confuse the jury is substantial. Thus, the trial court properly exercised its discretion to exclude inquiry into the incompetency ruling.

■ The defendant next argues that it was error to instruct the jury on accomplice liability where the indictment charged both that the defendant was aided by two others in the commission of a crime, and that he strangled the victim. The indictment alleged: "Munson, in concert with and aided by Burton Michael Gourlay and Leslie Noonan, purposely caused the death of [the victim]. Munson purposely caused the death of [the victim] by strangling him." The defendant argues that it is significant that the second sentence seemingly alleges principal liability alone. We disagree.

"We have consistently stated . . . that language in an indictment alleging that a defendant acted 'in concert with' another is sufficient to charge the defendant both as a principal and as an accomplice." *State v. Sinbandith*, 143 N.H. 579, 584 (1999). Therefore, regardless of whether the second sentence was intended to allege the means by which the defendant acted in concert with Gourlay and Noonan or that the defendant acted as principal, the indictment "notif[ied] the defendant of the charges he must be prepared to meet at trial." *State v. Hilton*, 144 N.H. 470, 475 (1999). Here, the defendant was notified that he would be charged as both an accomplice and as a principal, just as the jury was eventually charged. Accordingly, we affirm the conviction.

*Affirmed.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.